THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN J. BENNETT, JR., as Attorney-General, et al., Appellant, v. EARL S. LAMAN, Respondent.

Submitted March 7, 1938; decided April 12. 1938.

*John J. Bennett, Jr., Attorney-General (Sol Ullman, Ernest P. Cole* and *Henry Epstein* of counsel), for appellant. The practice of medicine, continued daily and threatened in the future, by one who is not licensed to do so, constitutes a public nuisance *per se.* (*State* v. *Anderson,* 6 Tenn. Civ. App. 1; *Kentucky* v. *Payne,* 213 Ky. 382; *Sloan* v. *Mitchell,* 168 S. E. Rep. 800; *State* v. *Lindsay,* 85 Kan. 79; *Dworken* v. *Apt. House Assn.,* 176 N. E. Rep. 577; *Fitchette* v. *Taylor,* 254 N. W. Rep. 910; *Rhode Island Bar Assn.* v. *Auto Service,* 179 Atl. Rep. 139; *Ottaway* v. *Lowden,* 172 N. Y. 129; *People* v. *Hawker,* 152 N. Y. 234; 170 U. S. 189; *State* v. *Smith,* 29 Pac. Rep. [2d] 718; *State* v. *Howard,* 241 N. W. Rep. 682; *City of New Orleans* v. *Liberty Shop,* 157 La. 26; *Crolius* v. *Douglas Boat Club,* 139 Misc. Rep. 29; *City of New York* v. *De Peyster,* 120 App. Div. 762; 190 N. Y. 547; *Gottlieb* v. *Matckin,* 117 Misc. Rep. 128; *Brown* v. *Shyne,* 242 N. Y. 176; *People* v. *Lee,* 151 Misc. Rep. 431.) The continuous practice of medicine by one who is unlicensed and who is uninformed, untrained and unskilled, and whose acts have had and will have harmful and serious consequence by reason of which a dangerous and serious menace is threatened, constitutes a public nuisance in fact which may be restrained by a court of equity. (*State* v. *Smith,* 29 Pac. Rep. [2d] 718; *Kentucky State Board* v. *Payne,* 213 Ky. 382; *State* v. *Anderson,* 6 Tenn. Civ. App. 1; *State* v. *Lindsay,* 116 Pac. Rep. 207; *Beaumel, Inc.,* v. *F. B. & W. Realty Corp.,* 152 Misc. Rep. 631.) The penal remedies are not exclusive as to acts which are dangerous to the health of the People. (*City of New York* v. *N. J. & S. I. Ferry Co.,* 173 App. Div. 496; *City of New York* v. *De Peyster,* 120 App. Div. 762; 190 N. Y. 547; *Crolius* v. *Douglas Boat Co.,* 139 Misc. Rep. 29; *Livingston* v. *Van Ingen,* 9 Johns. 507; *Thomson* v. *N. Y. & H. R. R. Co.,* 3 Sandf. Ch. 625; *United States* v. *Bank of New York,* 296 U. S. 337; *Matter of Wood,* 194 Cal. 49; *State* v. *Anderson,* 6 Tenn. Civ.

App. 1; *Sloane* v. *Mitchell*, 168 S. E. Rep. 800; *Kentucky* v. *Payne*, 213 Ky. 382; *Fitchette* v. *Taylor*, 254 N. W. Rep. 910; *United States* v. *Debs*, 158 U. S. 564.) The allegations of the complaint show that the penal remedy is inadequate to prevent a continuance of defendant's acts in the future. (*State* v. *Anderson*, 6 Tenn. Civ. App. 1; *State* v. *Smith*, 29 Pac. Rep. [2d] 718; *Kentucky State Board* v. *Payne*, 213 Ky. 382; *Sloane* v. *Mitchell*, 168 S. E. Rep. 800; *Matter of Debs*, 158 U. S. 564; *Matter of Wood*, 194 Cal. 49; *State of Ohio* v. *Cox*, 257 Fed. Rep. 334; *Robbins* v. *United States*, 284 Fed. Rep. 39.) Equity may enjoin a public nuisance detrimental to public health on the application of the People even though no property right exists. (*United States* v. *Gray*, 201 Fed. Rep. 291; *Com.* v. *McGovern*, 116 Ky. 212; *N. A. Ins. Co.* v. *Yates*, 214 Ill. 272; *Chicago Fair Grounds* v. *People*, 60 Ill. App. 488; *State* v. *Lindsay*, 85 Kan. 79; *State of Ohio* v. *Cox*, 257 Fed. Rep. 334; *Robbins* v. *United States*, 284 Fed. Rep. 39; *Dean* v. *State*, 151 Ga. 371; *Kentucky State Board* v. *Payne*, 213 Ky. 382; *State* v. *Chicago*, 88 Neb. 669; *State of Ohio* v. *Cox*, 257 Fed. Rep. 334.)

*Glen N. W. McNaughton* and *Arthur J. Delany* for respondent. The Attorney-General is seeking to have equity enjoin a crime. This equity will not do. (*People* v. *Universal Chiropractors' Assn.*, 302 Ill. 228; *State* v. *Maltby*, 108 Neb. 578; *Dean* v. *State*, 151 Ga. 371; *Redmond* v. *State*, 152 Miss. 54; *State* v. *Johnson*, 26 N. M. 20; *People* v. *Pierson*, 176 N. Y. 201; *Merz* v. *Murchison*, 11 Ohio Cir. Ct. Rep. [N. S.] 458; 20 Ohio Cir. Ct. Rep. 646; *Woollcott* v. *Shubert*, 169 App. Div. 194; *Village of Brockport* v. *Johnston*, 13 Abb. N. C. 468; *Walsh* v. *Cusack Co.*, 196 N. Y. Supp. 435; *Wollitzer* v. *National Title Guaranty Co.*, 148 Misc. Rep. 529; *Stuart* v. *La Salle County*, 83 Ill. 341: *State* v. *Uhrig*, 14 Mo. App. 413.) The complaint contains no allegation to take the appellants' cause of action out of

the operation of the rule that equity has no criminal jurisdiction. (*People ex rel. Lemon* v. *Elmore*, 256 N. Y. 489; *Matter of Debs*, 158 U. S. 564; *Respass* v. *Commonwealth*, 131 Ky. 807; *State* v. *Ehrlick*, 65 W. Va. 700; *State* v. *Maltby*, 188 N. W. Rep. 175; *State* v. *Johnson*, 26 N. M. 20; *Dean* v. *State*, 151 Ga. 371; *Redmond* v. *State*, 152 Miss. 54; *People* v. *Universal Chiropractors' Assn.*, 302 Ill. 228; *Brown* v. *Shyne*, 242 N. Y. 176.) Equitable jurisdiction to restrain unlawful practice of medicine is generally refused. (*State* v. *Maltby*, 108 Neb. 578; *Dean* v. *State*, 151 Ga. 371; *Merz* v. *Murchison*, 11 Ohio Cir. Ct. Rep. [N. S.] 458; 30 Ohio Cir. Ct. Rep. 646; *State* v. *District Court*, 77 Mont, 361; *State* v. *Ehrlick*, 65 W. Va. 700; *State* v. *Johnson*, 26 N. M. 20; *People ex rel. Shepardson* v. *Universal Chiropractors' Assn.*, 302 Ill. 228; *Redmond* v. *State*, 152 Miss. 54; *State* v. *Smith*, 29 Pac. Rep. [2d] 718; *Crowder* v. *Graham*, 201 S. W. Rep. 1053; *People ex rel. Chiropractic League of California* v. *Steele*, 40 Pac. Rep. [2d] 959.)

CRANE, Ch. J. This action has been brought by the People on relation of the Attorney-General and the State Board of Regents to restrain the defendant from practicing medicine unlawfully and in violation of the Education Law. (Cons. Laws, ch. 16.) Before service of an answer, the defendant moved to dismiss the complaint, and the courts below have granted that motion. On this appeal we must take the facts alleged in the complaint to be true. The complaint is a very lengthy one, and we shall not attempt to summarize all the allegations, but shall call brief attention to those we deem material and more important. The situation as outlined in the complaint appears thus:

For the past fifteen years the defendant has maintained offices in the city of Binghamton and in Endicott city, in the county of Broome. During that time he has practiced medicine, as defined in section 1250, subdivision 7, of the Education Law, and is holding himself out to the public as

being able to diagnose and treat diseases, pains and physical conditions. In that period he has treated a great many patients and has received compensation for his services. He lacks knowledge, skill and ability for the practice of medicine in this State, and he is inefficient and wholly unequal to the responsibilities of a medical practitioner in this State. It appears that after leaving high school defendant was by turn a prescription clerk in a drug store, a rural mail carrier, a railway mail clerk and a secret service agent. He spent only twenty-two months in a chiropractic school, and he neither spent the required time in study nor received instruction in the prescribed subjects, as demanded by this State of an applicant to practice medicine.

Defendant gives his patients chiropractic treatments and in his work he has used and applied heat and electric lamps, light rays, vibrators and ointments. He intends and threatens to continue the practice of medicine and to hold himself out as being able to diagnose and treat human diseases, pains and physical conditions.

The complaint sets forth all the requirements of the Education Law respecting the qualifications, examinations and licensing of practitioners, and alleges that defendant lacks the proper qualifications, training and knowledge required by the law; that he has never been examined, licensed or registered as a physician, physiotherapist or osteopath under the laws of this State; and that he has no authority to practice in this State. He has openly, repeatedly and intentionally carried on his practice with full knowledge that he is violating the law of this State and he is endangering the health and welfare of the people. The complaint charges that by reason of the activities of defendant and other chiropractors of the county in publicity and propaganda, that many members of the community have come to believe that regardless of the provisions of law, chiropractors are entitled to practice in this State, even though they practice medicine in doing so.

It is finally alleged: " That repeated criminal prosecutions of defendant for his unlawful practice of medicine, will make necessary a multiplicity of criminal prosecutions of defendant for his myriad daily acts of unlawful practice, and should convictions result at any time, the penalties provided by law would be insufficient and inadequate as to defendant and would not afford protection to the health and safety of the public as against his uninformed, unskilled, inefficient, incompetent, unqualified and unlicensed practice of medicine. On information and belief, that the continuous, habitual and intentional violation of the law by defendant in practicing medicine in the State of New York without a license to so practice, and the continuous diagnosis and treatment by defendant of the diseases, pains, deformities and physical conditions of men, women and children in the State of New York in an uninformed and unskilled manner and without possessing the education, professional ability and medical knowledge required by law, has endangered, impaired and imperilled and threatens to endanger, impair and imperil the health of the public, has defeated and defeats public policy, has constituted, constitutes and will constitute an open, public and continuous nuisance in the County of Broome, State of New York, and has been and will be subversive to and has caused and will cause irreparable injury to the health, safety and welfare of the People of the State of New York, and that said public nuisance cannot be caused to cease except by injunctive order in and by a court of equity." These allegations that defendant is inefficient, unskilled, lacking in learning and ability and wholly unequal to the responsibilities required of a practitioner of medicine, and that he has and will endanger the public health and welfare, and will be a menace to the health of the community, we treat as true. The regulation of the practice of medicine is undertaken by the State not for the protection of the physicians themselves, but for the protection and welfare of the people. " The power of

the State to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud." (*Dent* v. *West Virginia*, 129 U. S. 114, 122; *People* v. *Mulford*, 140 App. Div. 716; affd., 202 N. Y. 624.) Those seeking medical attention have no means of estimating the skill and ability of the physician, and must depend upon the State to permit only those qualified to engage in that profession. The fact that one practicing does not possess a license does not necessarily mean that he is ignorant, incapable and a menace to the public health. In the case at bar, however, the complaint alleges that the defendant is unskilled, incapable, lacking wholly in the qualifications required by statute, and had endangered and will continue to be a menace to the public health.

Article 48 of the Education Law governs the practice of medicine in this State. We need not advert here to the various provisions of that article. Section 1263 provides for penalties. By subdivision 2:

" Any person who not being then lawfully licensed or authorized to practice medicine within this state shall

" (a) Practice or advertise to practice medicine; or

" (b) Use in connection with his name any designation tending to imply or designate him as a practitioner of medicine; or

" (c) Use the title ' doctor ' or any abbreviation thereof in connection with his name or with any trade name in the conduct of any occupation or profession involving or pertaining to the public health or the diagnosis or treatment of any human disease, pain, injury, deformity, or physical condition, unless duly authorized by law to use the same; * * * shall be guilty of a misdemeanor."

That is the punishment prescribed by statute for the unlawful practice of medicine. The question before us on this appeal is whether a court of equity of this State has jurisdiction to enjoin the unlawful activities of defendant,

or whether jurisdiction over his acts exists only in the proper criminal courts.

That a court of equity will not undertake the enforcement of the criminal law, and will not enjoin the commission of a crime is a principle of equity jurisprudence that is settled beyond any question. There can equally be no doubt that the criminal nature of an act will not deprive equity of the jurisdiction that would otherwise attach. (*Cranford* v. *Tyrrell*, 128 N. Y. 341; *Davis* v. *Zimmerman*, 91 Hun, 489, 492; *Matter of Debs*, 158 U. S. 564, 593.) Whether or not the act sought to be enjoined is a crime, is immaterial. Equity does not seek to enjoin it simply because it is a crime; it seeks to protect some proper interest. If the interest sought to be protected is one of which equity will take cognizance, it will not refuse to take jurisdiction on the ground that the act which invades that interest is punishable by the penal statutes of the State. Equity does not pretend to punish the perpetrator for the act; it attempts to protect the right of the party (here the People) seeking relief, and to prevent the performance of the act or acts, which here may injure many.

In an early case in this State, Chancellor KENT laid down a rule which has been often cited (*Attorney-General* v. *Utica Ins. Co.*, 2 Johns. Ch. 371): " If a charge be of a criminal nature, or an offense against the public, and does not touch the enjoyment of property, it ought not to be brought within the direct jurisdiction of this court, which was intended to deal only in matters of civil right, resting in equity, or where the remedy at law was not sufficiently adequate. Nor ought the process of injunction to be applied, but with the utmost caution. It is the strong arm of the court; and to render its operation benign and useful, it must be exercised with great discretion, and when necessity requires it. Assuming the charges in the information to be true, it does not appear to me that the banking power, in this case, produces such imminent and great mischief to the community, as to call for this sum-

mary remedy. * * * It is an extremely rare case and may be considered, if it ever happened, as an anomaly, for a court of equity to interfere at all, and much less, preliminarily, by injunction, to put down a public nuisance which did not violate the rights of property, but only contravened the general policy " (pp. 378, 380).

In that case an information was filed by the Attorney-General against the defendants, charging them with engaging in banking operations, without any authority under their charter and in violation of the act to restrain unincorporated banking associations. The information concluded with a prayer for an injunction to restrain the company from the business incident to incorporated banks. In refusing an injunction, the opinion of the Chancellor concluded: " The exercise of the banking power cannot be brought under the head of a public nuisance. It has none of the characteristic marks of a mischief which calls for such a remedy as injunction. It may be endured without excessive public annoyance, until it can be abated by the regular process of the common law. Even if it was a nuisance, I should not deem myself sufficiently authorized to abate it, on the strength of one solitary modern case in the exchequer, by no means analogous. It is well understood, that public nuisances are public offenses, over which the courts of law have had a uniform and undisputed cognizance " (p. 390). The rule is also stated in 5 Pomeroy's Equity Jurisprudence (§§ 1890, 1893, 1894).

The stress upon property rights is again repeated in *Matter of Debs* (158 U. S. 564, 592, 593), where it was said: " Indeed, it may be affirmed that in no well-considered case has the power of a court of equity to interfere by injunction in cases of public nuisance been denied, the only denial ever being that of a necessity for the exercise of that jurisdiction under the circumstances of the particular case. * * * Again, it is objected that it is outside of the jurisdiction of a court of equity to enjoin the commission of crimes. This, as a general proposition, is unquestioned.

A chancellor has no criminal jurisdiction. Something more than the threatened commission of an offense against the laws of the land is necessary to call into exercise the injunctive powers of the court. There must be some interferences, actual or threatened, with property or rights of a pecuniary nature, but when such interferences appear the jurisdiction of a court of equity arises, and is not destroyed by the fact that they are accompanied by or are themselves violations of the criminal law."

Although invasion of property rights or pecuniary interests is emphasized in some of the earlier cases as a basis for equitable interference, there appeared later a recognition that public health, morals, safety and welfare of the community equally required protection from irreparable injury.

In *Stead* v. *Fortner* (255 Ill. 468, 478) the court said: " The maintenance of the public health, morals, safety and welfare is on a plane above mere pecuniary damage although not susceptible of measurement in money, and to say that a court of equity may not enjoin a public nuisance because property rights are not involved, would be to say that the State is unable to enforce the law or protect its citizens from public wrongs."

In *Kentucky State Board of Dental Examiners* v. *Payne* (213 Ky. 382, 388, 389) the Kentucky Court of Appeals had before it an appeal involving an action to restrain the defendant from practicing dentistry without having first obtained a license as prescribed by statute. The court said: " * * * Moreover, we are unable to see why the remedy would prevail in cases where purely property rights are involved and withheld in cases where health, and possibly life, is involved, since to hazard the latter is as much a nuisance as it is to imperil and impair the former, even if we were compelled to place the grounds of our decision upon the right of the Commonwealth to abate a nuisance. But we are not convinced that the right to maintain this action rests solely upon that ground. * * * It is

freely admitted that equity will not enjoin the commission of a crime as such. * * * but where the chief purpose of the statute is to provide for the public welfare by regulating (not prohibiting) some already lawful calling and only provides a penalty for refusing to comply with such regulations, and which penalty is enacted as a punishment for such refusal, we can discover no logical reason why a court in administering the laws of its jurisdiction would be powerless to *prevent* the doing of the prohibited act merely because a penalty (only nominal in this case) is attached for a refusal to comply with the regulation."

And in *Commonwealth* v. *McGovern* (116 Ky. 212, 238) it was said: " Nor do we think that the right of the chancellor to so employ the writ of injunction in this case is dependent upon the fact that a property right be involved. It may be justified upon the higher ground that the morals and safety of the public are involved, and that the public good is of the first consideration."

In our own State Chief Judge RUGER wrote (*Health Dept.* v. *Purdon*, 99 N. Y. 237, 241) : " The fact that the teas, the sale of which this action was brought to restrain, were adulterated, and that their possession for the purpose of sale to the general public was a nuisance subjecting the offenders to an indictment, and in case of sale, to actions for penalties for selling adulterated goods, cannot be successfully controverted; and yet this fact alone is insufficient to support the action. The plaintiffs have thereby established but one of the elements necessary to entitle them to the relief demanded. Courts will not in all cases interfere by way of injunction to restrain the continuance of an illegal trade, the abatement of a nuisance, or the prosecution of a dangerous employment. (*Wolcott* v. *Melick*, 3 Stockt. 204; *Attorney-General* v. *Utica Ins. Co.*, 2 Johns. Ch. 371.) Its power, however, to do so in case of the exercise of any trade or business which is either illegal or dangerous to human life, detrimental to health, or the occasion of great public inconvenience, is not only

conferred by the provisions of the statute, but *belongs to the general powers possessed by courts of equity to prevent irreparable mischief and obviate damages for which no adequate remedy exists at law.*"

In an action to enjoin defendant from selling and distributing milk to consumers or stores at less than the minimum prices fixed by the New Jersey Milk Control Board for the area in which the defendant conducts its business for sale within the State of New Jersey (*State ex rel. State Board of Milk Control* v. *Newark Milk Co.*, 118 N. J. Eq. 504, 513), the court stated the rule: " Where the property rights of many citizens are involved, it is proper for the government upon their behalf to invoke the powers of equity. Pom. Rem. § 480. *A fortiori*, the injunctive power may be invoked when the health or very existence of the people is menaced by the deprivation of an essential food commodity, or its service in a contaminated state." It seems clear, therefore, that a court of equity will extend its protection to the health and safety of the public, and, in a proper case, will enjoin acts which imperil that interest and are a public menace. The Supreme Court of Iowa said: "\* \* \* the practice of medicine without a license is injurious to the health of all the people, and therefore, under the general statute defining nuisances, constitutes and is a nuisance." (*State* v. *Howard*, 214 Iowa, 60, 66.) Broadcasting by an unlicensed radio station has been held to be a public nuisance which could be enjoined at the suit of the Attorney-General. (*United States* v. *American Bond & Mortgage Co.*, 31 Fed. Rep. [2d] 448.) " It is apparent that the elasticity of the word ' nuisance ' permits courts to stretch it to cover almost any situation which threatens injury to interests of the public." (Injunctions against Crime, by Harmon Caldwell, 26 Ill. L. Rev. 259, 268.)

Section 1251 of the Education Law provides that: " No person shall practice medicine \* \* \* : unless licensed by the department and registered as required by this

article." Provision is then made for the admission to examinations, the subjects of examinations, the licensing and registration of those found qualified to practice. The criminal penalties are then prescribed in section 1263, quoted before. The prohibition against the unlawful practice of medicine is made without relation to the imposition of a penalty. Equity is not concerned with the criminal feature of defendant's acts. Another section of the statute absolutely prohibits such unlawful practice. These provisions are designed to protect the people from the ministrations of incompetent, incapable, ignorant persons, and to avoid the consequent harm to their health and physical wellbeing. The interest of the State, the imminence of the danger and the irreparable character of the injury are here fully apparent. A court of equity is not powerless to lend its assistance.

We have pointed out that the fact that a criminal penalty is imposed for the performance of such acts will not deprive equity of its jurisdiction. In equity the court will consider the criminality of the act only to determine whether, under the particular circumstances, equitable intervention is necessary to give adequate protection to the interest invaded or whether justice will be best served by relegating the parties to the criminal court. It is not every violation of a statute, even of the statute under consideration, that calls for equitable interference. But where, as here, it is made to appear as a fact that real danger is threatened to the public health by the conduct of the defendant, that irreparable damage to the health of individuals is likely to result, and that criminal prosecution, even if successful, will not give adequate protection to those in danger, a proper case for injunction has been made out.

There are allegations in the complaint which charge that criminal prosecutions against defendant and others have been unsuccessful due to the reluctance of local juries to convict those defendants. That is not a factor calling for

equitable intervention. It is no part of the office of equity to take over the duties of other public officers. Nor will equity sit in judgment on the criminal courts. As heretofore pointed out, equity interferes, in a proper case, not to punish the individual for his past acts, but to afford more complete protection to the complaining party by enjoining unlawful acts in the future.

In some of the other States, an injunction has been permitted in similar cases. (*State* v. *Anderson*, 6 Tenn. Civ. App. 1; *Kentucky State Board of Dental Examiners* v. *Payne*, 213 Ky. 382; *Commonwealth ex rel. Attorney-General* v. *Pollitt*, 258 Ky. 489; *State ex rel. La Prade* v. *Smith*, 43 Ariz. 131.) Other States have refused to grant such an injunction. (*People ex rel. Shepardson* v. *Universal Chiropactors' Assn.*, 302 Ill. 228; *Redmond* v. *State*, 152 Miss. 54; *State* v. *Maltby*, 108 Neb. 578; *Dean* v. *State*, 151 Ga. 371.) In *People ex rel. Shepardson* v. *Universal Chiropractors' Assn.* it was stated that what defendants were doing was not a menace to public health, morals, safety or welfare. In *Dean* v. *State* (*supra*) there were no findings of harm, even it it were so conceded the chancellor could find.

The policy of our State in extending the remedy of injunction may be observed in the acts enacted by the Legislature. (Civ. Prac. Act, § 1218, to restrain the unlawful exercise of corporate rights; § 1221-b, to restrain the unlawful practice of law; Gen. Corp. Law [Cons. Laws, ch. 23], §§ 96, 135, 219, to restrain corporations, their officers, etc., under certain circumstances; Agriculture and Markets Law [Cons. Laws, ch. 69], § 38, to restrain the further violation of provisions of that chapter; § 258–e, to enforce compliance with the statute, rules and regulations respecting milk control; § 270-c, to restrain violation of statute, rules or regulations respecting public markets; Public Health Law [Cons. Laws, ch. 45], § 21, board of health may restrain violation of its orders or

regulations, violations of any regulations of State sanitary code, or may enforce its orders and regulations; §§ 343-a to 343-c, to enjoin certain nuisances; Penal Law, § 2357, enjoin use of a trade-mark; § 948, restrain the unlawful use of name of benevolent, humane or charitable corporation; Civil Rights Law [Cons. Laws, ch. 6], § 51, to restrain the invasion of right to privacy; Village Law [Cons. Laws, ch. 64], § 93, enforce obedience to village ordinance; § 179-c, restrain or abate violation of zoning law; Second Class Cities Law [Cons. Laws, ch. 53], § 42, to restrain violation or compel compliance with ordinance of the common council; Gen. City Law [Cons. Laws, ch. 21], § 20, subd. 22, compel compliance with or restrain violation of any ordinance of every city; Town Law [Cons. Laws, ch. 62], § 268, restrain or abate violation of zoning law.) It may be urged that the enactment of these statutes indicates a policy of permitting injunctions to restrain violation of statute to issue only in those cases where specific provision has been made. It is clear, however, that the policy of the State is to make the remedy more available, not to restrict it. Thus, section 1221-a subdivision 1, of the Civil Practice Act gives the Attorney-General the authority to maintain an action against any one rendering services " which are prohibited by law and the statutes in such case made and provided as constituting the unlawful practice of the law." The final judgment in favor of plaintiff must perpetually restrain the defendant from the " commission or continuance of the act or acts complained of." (§ 1221-b.) No special damage or injury to the public need be shown; commission of the prohibited acts is sufficient. Section 258-e of the Agriculture and Markets Law provides that the Commissioner may institute any action at law or in equity to enforce compliance with any of the provisions of the statutes, rules and orders committed to his administration, and may apply for relief by injunction if necessary

to protect the public interest "without being compelled to allege or prove that an adequate remedy at law does not exist."

In the case at bar the People would not be entitled to an injunction upon a mere showing that the statute had been violated or that acts prohibited by the statute had been performed, in the absence of special statutory authority. However, they go much further than that. They allege facts showing that the acts of defendant imperil the health of the people of the community, and will continue to cause irreparable injury to the health of the people and perhaps to their lives. The relators invoke only the ordinary powers of a court of equity. The power of the court to restrain acts which are dangerous to human life, detrimental to the public health and the occasion of great public inconvenience and damage is one that is possessed by all courts of equity. (*Health Dept.* v. *Purdon, supra.*) Enough has been shown here, which if proven upon the trial, will warrant the issuance of an injunction.

The judgments should be reversed, and the motion denied, without costs.

O'Brien, Hubbs, Loughran and Finch, JJ., concur; Lehman and Rippey. JJ., dissent.

Judgments reversed, etc.