Dore, J.
The People appeal from an order of the Court of General Sessions dismissing on the Grand Jury minutes a two count indictment against the four defendants herein. As the People have abandoned the second count of the indictment, the sole issue on appeal is whether the Court of General Sessions properly dismissed the first count charging defendants with unlawfully using a name, title and descriptive material which indicated and implied that they were carrying on a school of medicine in violation of subdivision 1 of section 224 of the Education Law, a violation of which is made a misdemeanor by subdivision 3 of section 224.
The defendants are principal officers and teachers of a school known as the “ Chiropractic Institute of New York ”, which is concededly unlicensed and has received no charter to carry on a school of medicine. Under subdivision 3 of section 6501 of the Education Law, a medical school is defined as “ any medical school, college or department of a university registered by the regents as maintaining a proper medical standard and as legally incorporated.” The same section, subdivision 4, so far as relevant defines the practice of “ medicine ” as holding oneself out as being able “ to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition ” and undertaking “ by any means or method ” to diagnose or treat the same.
“ Medicine ” has been defined as the “ department of knowledge and practice which is concerned with the cure, alleviation, and prevention of diseases in human beings, and with the restoration and preservation of health.” (New English Dictionary, edited by Murray, Vol. VI, pt. I, L-M.) In a more *232 restricted sense, as distinguished, e.g., from surgery or obstetrics, medicine is defined by the same authority as “ the art of restoring and preserving health by the administration of remedial substances.” Stedman’s Medical Dictionary (14 Rev. ed.), defines medicine as “ The art of preventing or curing disease, the science which treats of disease in all its relations.” In People v. Ellis (162 App. Div. 288, 289) quoting the definition of the new Standard Dictionary, the Second Department said: “ ‘ Medicine,’ according to the new Standard Dictionary, is 1 The healing art; the science of the preservation of health and of treating disease for the purpose of cure. ’ ” The catalogue received in evidence before the Grand Jury states that ‘ ‘ the ' chiropractor analyzes the mechanical imperfections of the human body, determines where they interfere with nerves and adjusts the body parts back to normal position. This adjustment frees the nerves and puts the cells back under control. Health is the natural result.” After setting forth the names of the faculty and the courses, many of which the Grand Jury evidence indicated were courses usually taught in recognized medical schools, the catalogue then sets forth the hours and the type of training in various departments of the school; e.g., anatomy, neurology, chemistry, pathology, diagnosis, chiropractic and special clinical subjects.
Under the heading “ Department of Anatomy ” the catalogue represents that a series of lectures will be given to the students “ on human anatomy designed to acquaint the beginning student with the relative location of structures ’ ’ and ‘1 a complete study of the bones of the vertebral column, pelvis, thorax, and the extremities, their descriptions and characteristics with relation to function. * * * ”; “a complete study of the cranium, osteologically * * * ”; lectures upon ‘‘ the anatomy of the heart, arteries, veins and lymphatics, and their anatomical relationships ”; “ study of' the circulation of blood, including the systemic, portal, pulmonarv and foetal branches.” Under “ Histology ” it is stated that lectures and a laboratory course are given 11 in the study of the cells and tissues of the human body. ’ ’
Under the heading “ Department of Neurology ” the catalógale shows that a lecture and discussion course is given “ comprising a general introduction to neurology, the study of the brain and its component parts, the ventricles of the brain and adjacent structures, the twelve pairs of cranial nerves and the vertebral cord;” also a course of lectures and demonstrations covering the subject of neurology, “ nervous diseases, their *233 diagnoses, the determination of the location of lesions and neurological examination; ’ ’ and also advanced “ lectures and demonstrations to aid the student in grasping the practical application of neurological principles in relation to chiropractic.”
Under £< Department, of Pathology ” the catalogue sets forth that lectures and demonstrations in laboratory work will be given at the school ££ in which the tissue changes due to disturbances of normal functions are studied. The study of disease in all its nature, especially the functional and structural changes caused by it.” Under “ Department of Diagnosis ” the catalogue states that lectures will be given on a “ sequential consideration of the symptoms of disease, particularly designed to enable the student to recognize and classify by group, type and name, all the diseases.” Under ££ Clinical Diagnosis ” the catalogue includes lectures and demonstrations of ££ methods of diagnosis. .=:? * * the examination of patients, subjective and objective symptoms, * * * and the prognosis of diseases.”
It is true that a number of the subjects mentioned in the catalogue as subjects of instruction in the school, are also taught in courses of psychology or biology in colleges and high schools and if that were all the catalogue set forth there would be no adequate proof sufficient to sustain the indictment. Similarly, the mere use of the name ££ Chiropractic Institute of New York ” on the pamphlet or otherwise would be insufficient. But the descriptive material in the catalogue read as a whole, as it must be, and considered in all its parts and their relations to each other, together with the claimed admissions of defendants in the Grand Jury minutes showing the use of the catalogue, is sufficient in our opinion, as the above analysis of the catalogue shows, to indicate that the school and the defendants held themselves out as teaching the diagnosis and treatment of human diseases with a view to a cure and accordingly conducting a school of medicine in violation of section 224. It is true the treatment is not by drugs or medicines as such but through chiropractic methods; that is, through what the catalogue calls the principles and practice of ££ chiropractic ” or “ the therapeutic science of body mechanics”. But the statute forbids the practice of medicine without a license ££ by any means or method ” or conducting a school of ££ medicine ” without proper authorization.
Section 224 is a part of article. 5 of the Education Law, the title of which article is ££ University of the State of New York.” Section 6501 is in article 131 of the Education Law, the title of *234 which is “ Medicine; Osteopathy; Physiotherapy.” The heading of section 6501 is ‘ ‘ Definitions. As used in this article: ’ ’ Subdivision 4 of section 6501 defining the practice of “ medicine ” contains the phrase “ within the meaning of this article ”. Defendants, accordingly, contend that the definition of the practice of medicine contained in section 6501 of article 131, may not be applied to the prohibitions contained in section 224 of article 5. Article 131 relates specifically to “ Medicine ”; article 5 to the organization, constitution and powers of “ The University of the State of New York ” and section 224 is headed “ Prohibitions.” In view of the titles and purposes of the two articles, we think the Legislature did not intend to exclude the definitions under article 131 from any bearing on the prohibitions contained in section 224 of article 5.
The statute, in our opinion, was passed not merely, as defendants contend, to prevent any candidate or student from being deceived or defrauded into thinking he would get the degree of “ M.D. ” from the school, but the limitations and standards set by the Legislature were for the protection of the public in the interest of public health.
On adequate factual proof showing that defendants in the respective records in question were actually diagnosing and treating human diseases, the courts have frequently held that unlicensed practitioners of chiropractic are subject to penalties for the illegal practice of medicine (People v. Scallon, 274 App. Div. 783, affd. 298 N. Y. 805 [1st Dept., 1948]; People v. Ellis, 162 App. Div. 288 [2d Dept., 1914]; Wendel v. Board of Regents, 275 App. Div. 661; Brown v. Shyne, 242 N. Y. 176, 178). The Court of Appeals in People ex rel. Bennett v. Laman (277 N. Y. 368, 384) sustained a complaint for an injunction to restrain a defendant, a chiropractor from practicing medicine unlawfully on the ground that the facts alleged showed that the unlicensed defendant therein would imperil the health of the people of the community.
Each case depends upon its own particular facts. This court, in People v. Maybrook (276 App. Div. 192), decided herewith, held that the mere use of the word “ chiropractic ” or “ chiropractor ” in an advertisement is not^ in and of itself, without further proof of what the person actually does, sufficient to sustain a count in an indictment charging the unlawful practice of medicine. In that same case, however, on the basis of the Grand Jury minutes factually *235 showing wrhat the defendant therein actually did, we reinstated the first count charging the defendant with unlawfully practicing medicine without authorization. In the case before us the first count of the indictment is based not on the mere use of the words “ Chiropractic Institute ” but on corroborative proof in the Grand Jury minutes, read with the catalogue, all of which shows that the school and defendants, as its principal officers and teachers, held themselves out to teach the students attending therein the diagnosis and treatment of human diseases with a view to a cure, and, accordingly, held themselves out as a school of “ medicine ” within the meaning of subdivisions 1 and 3 of section 224 of the Education Law. As the school v2as concededly unlicensed, sufficient wras shown to support the first count herein.
The order dismissing the indictment should be modified by dismissing only the second count and as so modified, affirmed, without costs.