Joseph F. Hawkins, J.
Plaintiff, the Town of Poughkeepsie, moves for an injunction pendente lite to restrain the defendant, Hopper Plumbing and Heating Corporation (hereinafter referred to as “Hopper”) from completing its plumbing contract on the Sheafe Road School and from commencing work on the Hagantown Elementary School. Joined as parties defendants are the Central School District No. 1 and the Union Free School District No. 2. The prayer for injunctive relief is predicated upon the failure and refusal of the defendant Hopper to obtain plumbing licenses and permits from the Town of Poughkeepsie where the schools are located.
Concededly, Hopper neither at the time the contracts were awarded to it by the two school boards — nor at present — has *24 or had a certificate of competency issued by the plaintiff authorizing it to do plumbing work within the town’s jurisdiction. A substantial part of the plumbing work has been performed on the Sheafe Road School — approximately two thirds — whereas work on the Hagantown School is shortly to commence.
In support of the motion, there are affidavits of Otis H. Porter, the town’s Plumbing Inspector and Frank C. MacBrien, Chairman of the Plumbing Board. The latter avers — and this is not disputed — that Hopper has neither previously applied for, nor does it have an application pending for a license; and the former to conversations with Eugene E. Hopper, president of the defendant corporation, in which Hopper was informed of the local plumbing code requirements.
The defendants urge, inter alia, general insufficiency; disputed issues of fact and law; no irreparable injury; laches; balancing of the equities, and plaintiff’s having an adequate remedy at law. The main thrust of defendants’ argument, however, is that the Education Law renders a school building project beyond the purview of the local plumbing code.
This court has jurisdiction to entertain and determine the issues. The Plumbing Code of the Town of Poughkeepsie was duly enacted pursuant to statutory authorization embodied in subdivision 2 of section 130 of the Town Law of the State of New York. Ab initio, however, the defendants have asserted that the plumbing code is inapplicable to the construction of a school building by virtue of section 408 of the Education Law. We are not, however, persuaded by the authorities cited in support of this plea of immunity. They consist solely of intramural opinions solicited from the State Comptroller’s office, confined to determinations by this executive agency that local public school boards need not obtain building permits; that a town’s building code does not govern; and that a school district need not comply with the State Building Code. (7 Op. St. Comp., 1951, p. 198; 8 id. 285 [1952]; 16 id. 384 [1960].) If rulings by State nonjudicial agencies are to be deemed of controlling influence, that of the Attorney-General rendered on February 19 (1962 Atty. Gen. 90-91) is far more persuasive. That branch of government held that the Education Law ‘ ‘ does not override the authority” granted to municipalities requiring “a person doing plumbing work within a city to be a licensed plumber therein (Matter of Gilbert v. German, 183 Misc. 132).”
The issue at bar is not one of novel impression: some four days after the Attorney-General’s opinion (supra), in City of Kingston v. Bank (45 Misc 2d 176), the late Justice Kenneth S. MacAffer, Albany County Supreme Court, to whom the matter *25 was referred, was confronted witli virtually the same state of facts, i.e., doing plumbing work on a public school, differing only in that the plumber contractor there took the local licensing examination, but failed. In granting the City of Kingston’s motion for a temporary injunction, the court held (p. 177):
11 There is no conflict therefore between the provisions of the applicable sections of the Education Law and the applicable provisions of the General City Law. The sole question for determination here is whether the defendant Bank, who is not licensed as a plumber in the City of Kingston, may engage in such work within the City of Kingston.
“ The defendant Bank is working under the plumbing contract in violation of said section 1 of the Plumbing Code. (Matter of Gilbert v. German, 183 Misc. 132.) He may be temporarily restrained from so doing without a showing of special damages or injury to the public. (City of Utica v. Ortner, 256 App. Div. 1039; City of New York v. Windsor Madison Corp., 14 Misc 2d 674; People ex rel. Bennett v. Laman, 277 N. Y. 368; Village of Old Westbury v. Hoblin, 141 N. Y. S. 2d 186.)
“ Under the circumstances presented here, it would seem that the defendant Bank is not qualified to engage in plumbing work within the City of Kingston without a license pursuant to the provisions of the aforesaid ordinance of this city and that the plaintiff therefore is entitled to a temporary injunction restraining Mm from so proceeding.” (Emphasis ours.)
We find in section 408 of the Education Law no possible basis for the claimed immunity. Surely there is ample skill and wit in the Legislature when drafting the legislation — most recently amended in 1962 — specifically and expressly to have exempted schools from such licensing if it so wished. The inescapable conclusion is that it was not so intended.
The defendants urge that if, indeed, a license is required, plaintiff’s laches bars injunctive relief. Disregarded are the plaintive and futile pleas of the local plumbing inspector; nor is there, under the circumstances, we hold to have been an inordinate or unreasonable interval between violation and legal action by plaintiff. Understandably, the town was diffident and reluctant to institute proceedings which conceivably might delay the completion of two sorely needed schools. With our Nation more concerned than ever before with the quality and adequacy of public education, the defendants presumably relied on these possible untoward consequences to deter plaintiff from asserting its rights. We hold there has not been laches, for as stated in Carmody-Wait, New York Practice (vol. 10, p. 535): “ All the circumstances are to be considered, and when it appears that *26 plaintiff never acquiesced in the violation of his rights, but has merely exercised patience, delay should not militate against him.” (Citing Rosenberg v. Rosenthal, 135 Mise. 282.)
Much reliance is placed by defendants on the argument that the sole remedy available to the plaintiff is to initiate criminal proceedings and, accordingly, that it possesses an alternative adequate remedy at law. As if in anticipation of the very point urged, section 135 of the Town Law specifically provides that in addition to malting a violation of an ordinance a misdemeanor or offense a town: ‘ ‘ may also maintain an action or proceeding * * * in a court of competent jurisdiction to compel compliance with or to restrain by injunction the violation of any such ordinance, rule or regulation, notwithstanding that the ordinance, rule or regulation may provide a penalty or other punishment for such violation.”
By prosecuting criminally, the town would not have available the “reasonably prompt, sufficient, and adequate” remedy requisite to bar it from obtaining relief in equity. (10 CarmodyWait, New York Practice, p. 544.) Significantly, the maximum punishment provided by the plumbing code is a fine of $50 for the first offense. (Perhaps the defendant Hopper’s intransigence was occasioned by the expectation that this was the maximum consequence it could or would sustain.)
Apart from the Town Law, there is abundant case law confirming equitable cognizance. That acts or failure to act may be amenable to criminal prosecution and do not preclude intervention by equity was determined in People ex rel. Bennett v. Laman (277 N. Y. 368, 376), in which Chief Judge Crabtb for the Court of Appeals held: “ There can equally be no doubt that the criminal nature of an act will not deprive equity of the jurisdiction that would otherwise attach. (Cranford v. Tyrell, 128 N. Y. 341; Davis v. Zimmerman, 91 Hun 489, 492; Matter of Debs, 158 U. S. 564, 593.) Whether or not the act sought to be enjoined is a crime, is immaterial. Equity does not seek to enjoin it simply because it is a crime; it seeks to protect some proper interest. If the interest sought to be protected is one of which equity will take cognizance, it will not re-fuse to take jurisdiction on the ground that the act which invades that interest is punishable by the penal statutes of the State.”
It is not incumbent upon the plaintiff municipality to establish any special damage or injury to the public for equity to restrain violations or to compel compliance with an ordinance. (City of Utica v. Ortner, 256 App. Div. 1039.)
The defendants seek to impugn plaintiff’s motives in instituting the action, characterizing it as motivated on behalf of a *27 “few licensed plumbers” and urging that it should not be accorded relief because it is brought ‘ ‘ merely to protect the technical right of a very few individuals.” In Matter of Gilbert v. German (183 Misc. 132, supra) similarly involving a non-licensed plumber doing work on a large housing project for the City of Utica, the action was instituted by a plumber employed by a competitor plumbing contractor. The court, in disposing of that argument, held (p. 136): “ Even if that contention were true, it would not be a defense to this proceeding. The petitioner (Mr. Gilbert) is seeking to enforce a right in which the general public is interested. The enforcement of that right is the concern of every citizen. In this case it might seriously affect the health of the community. The question of his good faith is beside the point.”
The State’s police power, exercised in licensing statutes, is invoked not to benefit the favored few in a profession or skilled trade but for the public’s protection. The people are thereby assured that the licensee has satisfactorily met certain standards, coupled with the salutary and effective protection that the licensee is subject to revocation or other discipline if inspection reveals noncompliance.
An integral part of and rationale for governmental licensing is the corollary inspection to determine compliance and proper performance. The employment here by the architect of a private firm of plumbing engineers cannot serve as a substitute for the policing of plumbing work and insuring adherence to standards by the town’s inspectors who are not beholden to or employed by anyone connected with the builder or contractors. The constitutional and statutory bases upon which such ordinance as the one involved herein are based are the police powers of the State, and objective, disinterested inspection and enforcement are vital to the proper exercise of such governmental functions.
Mindful of the possible unfortunate delay, and not unaware of the potential consequences to the defendant Hopper, this court, nevertheless, is constrained to grant the plaintiff’s prayer for an injunction pendente lite. To do otherwise is to condone disregard for the town’s duly enacted ordinance, neither the constitutionality nor validity of which is challenged by any of the defendants.
Despite the absence of mitigating circumstances absolving the school boards, as in Matter of Gilbert v. German (supra), such as reliance upon any prior opinions by their attorneys, the affidavits of the two presidents who urge merely against any action resulting in delay, and the architect who persists in arguing as an advocate that the local licensing law is superseded by the *28 Education Law, the court, in the exercise of its discretion, will not, at this time, enjoin the school boards. The motion is, therefore, denied as to these defendants, without costs, but without prejudice to a renewal of the application in the event the school board officials fail to act. Submit order on notice.