Arnold L. Fein, J.
This is an application by the Attorney-General for an order granting the appointment of a receiver pendente lite of approximately 68 paintings made by one David Stein, and the proceeds of any sale thereof, which are in the possession of defendant Wright Hepburn Webster Gallery, Ltd. (“ Gallery ”).
Pending the determination of this motion, the order to show cause dated September 14, 1970, (1) temporarily restrained defendant, Gallery, from physically transferring any of Stein’s paintings and the proceeds derived from the sale of said paintings; (2) permitted sale of such paintings only “ subject to cancellation”; and (3) impressed a trust on the proceeds of any sale of said paintings.
This novel application by the Attorney-General is based on the bizarre career of defendant, David Stein, who has not been served with process. In 1967, Stein, a former art dealer, was convicted in this county, on his plea of guilty, of six counts of counterfeiting art work and grand larceny. He had mastered the styles of such great artists as Chagall, Picasso, Matisse, Braque, Klee, Miro, Cocteau and Boualt, to such an extent that he was able to and did sell as the original works of such artists, *424 watercolors, gouaches and other paintings which he himself had created.
After serving his jail sentence, Stein was deported to France where he was arrested and subsequently convicted for selling art forgeries in that country. Stein is now in jail in Paris where he has apparently been permitted by the French authorities to produce paintings 1‘ in the style of ’ ’ such renowned artists as Chagall, Matisse, Picasso, Braque and others, subject to the proviso that they bear his own signature, “ Stein, £>.”, rather than the simulated signatures of these masters as had been his prior practice.
In April, 1969, Gallery’s affiliate in London exhibited and sold a number of such paintings made by Stein during his confinement.
Gallery is now exhibiting in its New York showroom approximately 68 such paintings made by defendant Stein. Gallery has placed a sign in its windows advertising: “ Forgeries by Stein ”. However, each painting bears the signature of Stein. Attached as exhibits to the moving papers are a circular and press release issued by Gallery announcing the date for an 1 ‘ official ’ ’ exhibition of “ Master Forger David Stein ” paintings. Both promotion pieces clearly indicate that the paintings are by Stein and are offered to the public as being ‘ ‘ in the style of ” “ Chagall, Picasso, Matisse, etc.”. The circular states: “ Master Forger David Stein Presents Braque, Klee, Miro, Chagall, Matisse, Picasso ”.
The underlying action on behalf of the State of New York demands that the court (1) declare these paintings a public nuisance to be abated; (2) enjoin their sale or transfer; (3) appoint a permanent receiver over them with appropriate instructions to turn them over to a museum or similar institution for use in research, identification and education in the detection of art forgeries and not to be disposed of in such a manner as to circulate in the art market and not to eradicate Stein’s signature.
The Attorney-General contends that Stein’s name can easily be removed from these paintings and that they will eventually find their way into the art market as original works of Chagall, Picasso, etc. The Attorney-General argues that because of the ability of Stein to simulate the works of the afore-mentioned great painters, Stein paintings constitute a continuing, potential threat and hazard to the cultural welfare of that segment of the public which buys, sells and collects art and to art lovers and the cultural institutions which exhibit the works of the artists that Stein is simulating.
*425 The issues presented by this application involve a case of first impression. The court is asked to find that the possible harm to the public from the sale of paintings made by a convicted forger “ in the style of ” acknowledged great painters warrants preventing this man from earning a livelihood by utilizing his peculiar and unusual artistic talents. It cannot be disputed that whatever Stein’s motives, he is an artist, both in terms of dictionary definitions and as a matter of practical application. His work in perfecting the style of the masters may properly be ascribed to that special talent with which true artists are uniquely endowed. Otherwise it cannot be argued seriously that harm could result from the sale of his works.
No claim is made by the Attorney-General that Stein is guilty of some criminal behavior by offering the subject paintings for sale to the public. However fraudulent or criminal his past transgressions have been, they cannot militate against Stein’s right as an artist to sell his own works, acknowledged as such. Although Stein’s prior deceptive practices cannot be completely overlooked in weighing the allegations that the same result will occur if his works are permitted to be sold commercially, at this juncture the court is merely presented with the possibility of the future commission of a crime, by Stein or some purchaser of his works. A court of equity will not enjoin the commission of a crime as such, much less a possible crime, although a nuisance may be enjoined, albeit the activity enjoined is also criminal.
Not one iota of proof has been submitted that anyone is now engaged or about to engage in the removal of Stein’s name for the purpose of passing off his work as an original work of one of the masters. It is difficult to perceive how these paintings constitute a public nuisance on the basis of the possibility or suspicion that this may occur.
The Attorney-General relies heavily upon People ex rel. Bennett v. Laman (277 N. Y. 368) to support his position that the paintings herein involved constitute a public nuisance which should be abated. Laman is clearly distinguishable. There the Attorney-General sought an injunction restraining defendant chiropractor from unlawfully practicing medicine in violation of article 48 of the Education Law prohibiting the practice of medicine without an appropriate education and license.
It was held that the mere fact that the defendant had violated the statute and was amenable to criminal prosecution therefor would not ground an injunction. However, said the court, an injunction would issue, if it could be proved that defendant was £ £ inefficient, unskilled, lacking in learning and ability and wholly *426 unequal to the responsibilities required of a practitioner of medicine, and that he has and will endanger the public health and welfare, and will be a menace to the health of the community ”. (277 N. Y., at p. 374) and that his practice of medicine and treatment of patients would ‘ ‘ imperil the health of the people of the community * * .* and continue to cause irreparable injury to the health of the people and perhaps to their lives.” (277 N. Y., at p. 384.) The requisite standard was proof of acts “dangerous to public health ” and consequent “ public inconvenience and damage ”. . (277 N. Y., at p. 384.) These essential elements to find a public nuisance are not shown in this case.
Section 1530 of the old Penal Law, in force until September 1, 1967, defined a public nuisance as:
‘‘ a crime against the order and economy of the state * * * in unlawfully doing an act, or omitting to perform a duty, which act or omission:
“ 1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; or
“ 2. Offends public decency; or * * *
“4. In any way renders a considerable number of persons insecure in life, or the use of property.”
The current Penal Law does not specifically define the term “public nuisance”. Instead, section 240.45 simply provides: “ A person is guilty of criminal nuisance when: 1. By conduct either unlawful in itself or unreasonable under all the circumstances, he knowingly or recklessly creates or maintains a condition which endangers the safety or health of a considerable number of persons; or 2. He knowingly conducts or maintains any premises, place or resort where persons gather for the purposes of engaging in unlawful conduct.”
It is manifest that Stein cannot be charged with the crime of nuisance. Prosecutions for the crime of nuisance as a practical m'atter generally fall into two categories: the maintenance of manufacturing plants, entertainment resorts and the like which by virtue of excessive noise, noxious gases, odors, etc. annoy or offend large areas of the community, or the conduct of resorts where persons gather for illegal or immoral purposes. (See Practice Commentary by Bichard Denzer and Peter McQuillan in McKinney’s Cons. Laws of JST. Y., Book 39, § 240.45, p. 177.) These statutory definitions of a public nuisance codify the distinction drawn at common law between public and private nuisances (see People v. Rubenfeld, 254 N. Y. 245). The teachings of the statutes .and the cases are that a public nuisance is an offense to the public of a neighborhood or community in the *427 enjoyment of its common rights, as distinguished from activity which results merely in injury even to a large number of persons in the enjoyment of private rights not shared by the members of the community or neighborhood at large. (Laman, supra; Rubenfeld, supra; New York Trap Rock Corp. v. Town of Clarkstown, 299 N. Y. 77; see 42 N. Y. Jur., Nuisances, § 5, p. 499.) Moreover, to establish a public nuisance it is essential to prove the injury as an accomplished fact. (People ex rel. Green v. Willis, 173 Misc. 442.) Consequently, the conduct of a lawful business may not be deemed to constitute a public nuisance unless something is done in the operation thereof which is unlawful or its maintenance is negligent or improper in such degree or respect as to work an unreasonable obstruction or injury to the public. No such showing is made here.
The relief sought here is novel and drastic. It should not be granted in the absence of a clear showing that defendants have committed some public wrong amounting to a nuisance.
It may well be that Stein’s paintings “ in the style of ” the masters are an attempt to appropriate ideas not his own and that the law should not permit one to profit who “ is endeavoring to reap where [he] has not sown ”. (International News Serv. v. Associated Press, 248 U. S. 215, 239.) However, such conduct does not constitute a public wrong. Stein’s work may, under the circumstances, run afoul of some appropriate copyright law, or may even constitute a violation of section 224 of article 12-E of the General Business Law, limiting the right to reproduce works of fine art. If so,' the rights violated are private and do not form a basis for action by the Attorney-General.
In this context, perhaps consideration should be given to Goethe’s query: “ People are always talking about originality; but what do they mean? As soon as we are born the world begins to work upon us, and keeps on to the end. What can we call ours, except energy, strength, will? If I could give an account of what I owe to great predecessors and contemporaries, there would be but a small remainder.” (Eckermann, Conversations with Goethe in the Last Years of His Life, p. 147.)
So it must seriously be doubted whether the court, at the instance of the State, should prevent conscious appropriation of knowledge where no deception of the public is proven.
In essence this is acknowledged by the Attorney-General. He concedes that the case does not fall within any of the sections of the Penal Law. Subdivisions 1 and 2 of section 170.45, “ criminal simulation ”, require a showing of intent to defraud, not shown here, Paintings such as these are not included among the items declared in section 400.05 to be a nuisance subject to *428 abatement. As has been noted, the criminal nuisance section 240.45 is limited to acts endangering the public health or safety. The Attorney-General argues that the acts here complained of should be enjoined because they endanger the public welfare, citing the State’s concern with the “moral, intellectual and spiritual needs ” of the citizen. (Barrett v. State of New York, 220 N. Y. 423, 428.) But that case merely sustained the right of the State to preserve the dwindling beaver population, a conservation measure, without being liable in damages to a landowner whose trees were damaged or destroyed by the protected beaver. The proper State concern to protect the beaver in the interest of the public welfare hardly provides a basis for State action to suppress paintings.
The Attorney-General’s reliance on State of New York v. Ingersoll (58 N. Y. 1) and Altschul v. Ludwig (216 N. Y. 459) is equally misplaced. Ingersoll (supra) was an action against the members of the notorious Tweed ring to recover moneys of which they had mulcted the County of New York. The court said, as quoted by the Attorney-General (p. 17): “If there were no other remedy for a great wrong, and public and individual rights were likely to suffer for want of a prosecutor capable of pursuing the wrong-doer and redressing the wrong, the courts would struggle hard to find authority for the attorney-general to intervene in the name of the people.”
It is significant that the court posited as a condition for any action, the existence of a wrong and actually held that the action by the Attorney-General would not lie because the wrong alleged was to the County of New York which could pursue its own remedies. No wrong is here shown either to exist or to be threatened. Altschul (supra) sustained a taxpayers’ action against the Building Commissioner to enjoin him from issuing a permit for and approving construction plans of a theatre building which were contrary to the building code. The Commissioner had proposed to proceed clearly in contravention of law. This is a far cry from the possibility of action by unknown persons in the indefinite future to remove or alter Stein’s signature on these paintings.
There remains only to consider the significance of defendant’s window sign and other, publicity describing the exhibit as being “ Forgeries By Stein ”. Both sides concede the si; paintings are not forgeries, as well they must. The essence of forgery, as recognized by article 170 of the Penal Law, the forgery article in its various sections, is the utilization as a “ means of defrauding another ” of that which “ purports to be in all respects an authentic creation of” or “fully authorized by its ostensible *429 maker ”. The signature of Stein on these paintings establishes there is no forgery even if a painting could be considered as within the condemnation of the article.
On this count, the advertising by defendant ‘ ‘ Forgeries By Stein ” is false, although when read in context this “ tag line ” is manifestly only an exaggerated form of “puffing”, a sales “gimmick”, like all too much advertising. This does not appear to violate the Penal Law or any other statute. Nor does the Attorney-General make any such claim.
Neither this advertising nor the possibility or suspicion that in the future someone may remove Stein’s name and substitute the name or signature of one of the masters is a sufficient basis for finding that the exhibition and sale of these paintings is a public nuisance.
Although defendant submitted no papers and no brief in opposition, it did move to dismiss on the oral argument. No useful purpose would be served by requiring an answer or by a trial.
Accordingly, plaintiff’s application is denied, the temporary restraining order is vacated, and the complaint is dismissed. Settle order.