Price Peck *v.* The State.

PRICE PECK *v.* THE STATE.

(*Nashville.*    January 13th, 1888.)

1. CRIMINAL LAW.  *Evidence.  Impeachment of Defendant as a witness. Charge of Court.*

A defendant, who testifies on his own behalf, on the trial of a criminal case, may be impeached in the same manner as any other witness; but the jury should be instructed to consider impeaching testimony as affecting only his credibility as a witness, and not as impairing the presumption of his innocence.

Cited: Acts 1887, Ch. 79.

Cases cited and approved: Gilliam *v.* State, 1 Head, 38; Ford *v.* Ford, 7 Hum., 92; Merriam *v.* State, 3 Lea, 394; 67 Mo., 380; 9 Nev., 179; 42 N. Y., 265; 50 N. Y., 240; 2 Lansing, 227; 36 Kansas, 90; 41 Cal., 429; 51 Ind., 14; 52 N. H., 459; 28 Conn., 309; 58 Mo., 507; 97 Mass., 587.

2. SAME.  *Same.  Hearsay.  Declarations of third persons.*

Where the defense to a criminal charge is, that a third person committed the offense, the confession of such third person, made after the perpetration of the crime, and not part of the *res gestæ*, is not admissible in evidence.

Cases cited and approved: Sible *v.* State, 3 Heis., 139; Rhea *v.* State, 10 Yer., 257; 67 N. Y., 218; 9 Ala., 990; 6 Tex., 650.

(See Sawyers *v.* State, 15 Lea, 694.)

Cited and disapproved: Hensley *v.* State, 9 Hum., 243.

---

FROM DAVIDSON.

---

Appeal in error from the Criminal Court of Davidson County.  G. S. RIDLEY, J.

QUARLES & TURLEY for Peck.

Attorney-General PICKLE for State.

FOLKES, J. The plaintiff in error was convicted of murder in the second degree, and sentenced to the penitentiary for ten years. He has appealed in error to this Court.

The first point urged for reversal necessary to be noticed involves the construction of a recent act of the Legislature not heretofore passed upon by this Court. It is entitled "An Act to permit parties defendant in criminal causes to testify in their own behalf." Section one is as follows:

*Be it enacted, etc.,* "That in the trial of all indictments, presentments, and other criminal proceedings, in any of the courts of this State, the party defendant thereto may, at his own request, but not otherwise, be a competent witness to testify therein.

"SEC. 2. That the failure of the party defendant to make such request and to testify in his own behalf, shall not create any presumption against him. But the defendant desiring to testify shall do so before any other testimony for the defense is heard by the Court trying the case."

This is the entire act.

The plaintiff in error in the trial below availed himself of the privilege of the act, was called as a witness, and testified. The State, in presenting its proof in rebuttal, called one Turbeville, who said: "I know Price Peck, and have known him for six or eight years. I know his general character." Objected to by defendant's counsel, on the

ground that the defendant's general moral charac-
ter cannot be inquired into unless said defendant
puts his character in issue first.    Court overruled
objection, and counsel excepts.    Witness continu-
ing: "It is bad, and from that general character
I would not give him full faith and credit in a
court of justice."  The record, continuing, shows:
"Defendant's counsel object to the above also, be-
cause the defendant's credibility is not only at-
tacked as a witness, but he is attacked as a de-
fendant by inquiring about his general moral char-
acter when it is not in issue, and when the
inquiry should be directed alone to his character
as to truth and veracity."    Objection overruled,
and defendant's counsel again excepts.

Before passing to the consideration of the ques-
tion here presented, it may be well for us to see
what the trial Judge said to the jury on the sub-
ject when he came to deliver his charge.

After laying down properly the various rules for
the guidance of the jury in testing the credibility
of witnesses in general, where there is a conflict
in the evidence, the Judge said: "I have permit-
ted the State in this case to offer evidence as to
the character of the defendant.    You will bear in
mind that this was done solely for the purpose of
enabling you to determine what weight the defend-
ant's testimony is entitled to as a witness, and not
for the purpose of weakening the presumption of
innocence which the law throws around him.    In
other words, you may weigh the proof which the

State has introduced on the subject of his character with all the other proof in the case in estimating how far you will believe him as a witness, but must not consider the presumption of his innocence weakened by the evidence on the subject of his character which the State has introduced."

Was the action of the Court in admitting the testimony, coupled with the instruction in relation thereto, erroneous? We think not. Under the act in question he cannot be made a witness. He becomes such voluntarily; and when he elects to place himself upon the stand as a witness, he can be treated in all respects as any other witness, with the same privileges and the same burthens, no more and no less, except so far as the Legislature has provided. The act undertakes to distinguish him from other witnesses in only three particulars:

*First*—He is not to be called except upon his own request.

*Second*—His failure to take the stand is not to create any presumption against him.

*Third*—He must be the first to testify for the defense when he proposes to become a witness.

The first two are privileges not enjoyed by other parties; the last is a burden. The Legislature having seen fit to make the three exceptions, the courts are not authorized to make any other. With the wisdom and the policy of the act we have nothing to do; this concerns the Legislature only. It is a natural step in the line of progress that began with the removal of the disqualification of

interest in civil suits, now removed by legislation in England and in almost all of the American States, and to a large extent applied to criminal trials by most of the States of this Union.

Speaking for myself, I agree with the view expressed by the learned writer quoted in the notes to Wharton's Criminal Evidence: "But though the new rule may tend, and very properly, to an increase in the number of convictions, there is not the slightest doubt that it will also prevent a number of wrongful convictions, if not make wrongful convictions almost impossible."

To return to the objections made to the evidence in the case at bar. It is earnestly insisted that such ruling operates to destroy the elementary principle of law that the State cannot go into proof of the general character of the accused until he first opens the door. The contention is not logical. The general rule remains unaffected. The accused is still safe from such an attack so long as he remains the accused only; but when he voluntarily places himself upon the stand he assumes the character of a witness, and as such must expose himself to be attacked to the same extent as other witnesses. Surely the courts would be slow to place a construction upon an act of the Legislature—if there were room for construction—that would allow a witness to be sworn and give his testimony against that of good and true men where the State's Attorney knows and is ready to prove him wholly devoid of moral sense and utterly

unworthy of belief, and at the same time prevent the State from showing the character of the witness as affecting his credit.

Under this act, a man repeatedly convicted of the crime of perjury can go before a jury in a community where he is unknown, and with a good manner and fair exterior give evidence in his own behalf, and the State remain powerless to impeach him, if the position contended for were tenable. Prior conviction of an infamous crime, it would seem, does not incapacitate him, as the statute gives him arbitrarily the right to testify in his own behalf, as was held by the courts of New York under a statute in the main similar to our own. *Newman* v. *People*, 63 Barb., 630. But, under the rule contended for, the record of such conviction could not be introduced, because, as a defendant, evidence of a distinct felony could not be proven against him. The statement of the proposition would seem to carry with it its own refutation.

It must be borne in mind that in Tennessee it has been long and well settled that in impeaching the credibility of a witness the inquiry is not, as in some of the States, restricted to the general reputation for veracity, but it involves his whole moral character. It has been regarded as essential to the ends of justice that both the court and jury should have full opportunity of knowing the entire moral character of the witness where credit is sought to be impeached. " In view of all of

which," as was said by Judge McKinney in *Gilliam* v. *The State*, 1 Head, 38, "it may be safely left to the jury to determine what degree of credit the witness is entitled to for truth, notwithstanding his other vices and immoralities of character, as his claim to veracity is the primary and important consideration."

According to our practice, then, the proper inquiry is whether the witness knows the general character of the person whose credibility is · in question, and whether, from such knowledge, the witness would believe him on oath. *Ford* v. *Ford*, 7 Hum., 92; *Merriam* v. *State*, 3 Lea, 394. So we see this witness has only been made to carry the same burden that rests upon all witnesses under our practice.

The charge of the Court, as far as language can do so, confines the effect of the testimony to his credibility. If such evidence, notwithstanding the charge, may by possibility prejudice him with the jury—and we have no right to suppose that the jurors, on their oaths, will not be controlled by the charge—the defendant cannot complain, since he voluntarily placed himself in a position where such evidence was admissible.

But we are not left alone to reason out our conclusions upon this question. It and kindred questions have been presented, and adjudged in accordance with the views here expressed, in other States where similar acts exist. The best considered case, perhaps, to which we have had access

is *The State* v. *Clinton,* 67 Mo., 380, where many cases are cited sustaining the conclusion there reached that "the defendant, as a witness in a criminal case, subjects himself *to the same* rules as to cross-examination and impeachment as other witnesses."

Similar statutes have been similarly construed in Nevada, New York, California, Massachusetts, Indiana, Connecticut, New Hampshire, and other States. *State* v. *Cohn,* 9 Nev., 179; *Brandon* v. *The People,* 42 N. Y., 265, where, on cross-examination, "Have you ever before been arrested for theft?" was held a proper question, no suggestion of privilege having been made; *People* v. *Connors,* 50 N. Y., 240; *McGarry* v. *The People,* 2 Lansing, 227; *State* v. *Pfefferle,* 36 Kansas, 90; *People* v. *McGungill,* 41 Cal., 429; *Mershon* v. *The State,* 51 Ind., 14; *State* v. *Ober,* 52 N. H., 459; *Town of Norfolk* v. *Gaylerd,* 28 Conn., 309.

The rule as to the general character of witness is the same in Missouri as in this State. *State* v. *Breeden,* 58 Mo., 507.

In Massachusetts it is held that where the defendant is a witness, he may be asked "whether he has been in prison on other charges." *Commonwealth* v. *Bonner,* 97 Mass., 587.

See also Wharton's Criminal Evidence, Section 427 *et seq.,* where the author takes this view of similar statutes.

We are of opinion, therefore, that there was no error in the action of the Court complained of.

It is next insisted that the judgment should be reversed because of the exclusion by the Court of the evidence offered on behalf of the defense to show that one Robert Woods had, after the killing, admitted to the witness that he had done the shooting.

In this there was no error.   The contention is that, as the defense was that the shooting was done by Robert Woods and not by the prisoner, any evidence was legitimate that went to show that such other person perpetrated the crime, which would have been legal against the individual upon whom it is attempted to place it if he were upon trial therefor; and the case of *Hensley* v. *The State*, 9 Hum., 243, is claimed as an authority for the position.

The point adjudged in that case does not warrant the contention.   The defendant was upon trial for arson.   It appeared that the mill-house was burned in the night; that the defendant had entertained hostility to the prosecutor, and had threatened to burn the house; that the tracks of a horse were discovered in the vicinity of the mill, and that defendant was in the neighborhood of the house at the time it was burned.   The defendant offered to prove "that John Richards had threatened to burn the mill-house, and was in the neighborhood when it was burned."   The evidence was excluded, and it was held error.

We need only say of this case what was said by this Court in *Sible* v. *The State*, 3 Heis., 139:

"It goes quite as far as we think it consistent with the well established rules of evidence to go, and we are not inclined to extend the principle of allowing declarations of third persons to be given in evidence, either to criminate or exonerate a defendant in criminal prosecutions."

The case at bar differs from the Hensley case in several very important particulars. Here the declaration sought to be proven was made *after* the crime; here the case rests upon direct, and not circumstantial, evidence, though there is a conflict in the testimony.

To admit such testimony as was offered would be to overturn the well-settled rules of law which exclude hearsay, and would open the door to the most easily manufactured evidence. The admission is not a part of the *res gestæ*, is not made under oath, and can be made for the purpose of exculpating the defendant, and its falsity afterward confessed, when it has accomplished the desired end.

But it is needless to elaborate a principle so well settled by authority.

This Court held, as early as 1837, in *Rhea* v. *The State,* that it is not competent for the defendant to prove by a witness that a negro slave had confessed to him that he had stolen the goods for the larceny of which the defendant was being tried. 10 Yer., 257.

On an indictment for murder the admissions of other persons that they did the killing, or committed the crime in controversy, are not evidence.

*Thomas* v. *The People*, 67 N. Y., 218; *Smith* v. *The State*, 9 Ala., 990; *Sharp* v. *The State*, 6 Tex. Ap., 650; Wharton's Cr. Ev., Sec. 225.

There is no error in the record, and the judgment must be affirmed.