Abraham J. Gellinoff, J.
This is an application by the City of New York for a preliminary injunction, primarily to restrain defendants "from continuing the public nuisance” of "establishing, continuing, using, maintaining, owning or leasing the subject premises for purposes of lewdness.” The city contends that the premises involved, operated as an establishment with "topless and bottomless” dancers, constitutes a "nuisance” under the State Public Health Law, and the Administrative Code of the City of New York, and that this court has the authority to order that it be closed.
The evidence as to the nature of the activities in the subject premises consists of two affidavits, one by a plainclothes police officer, and one by the publisher of a local community newspaper. Upon his visit to the premises, the police officer observed the following:
"As I entered, I observed four totally nude females dancing on a long platform located at the center of the premises. [They were] undulating and gyrating on the platform which consisted of three round table-like assemblies connected by thin walkways.
"I observed the four females proceed at the same time to squat and lean back on their arms. The females arched their backs upward and assumed positions with their legs spread wide apart.
"The females continued undulating and gyrating as they approached the edge of the platform. With their legs still spread wide apart, they proceeded to bring their vaginas within approximately three inches of the faces of the patrons seated at the edge of the platform. I observed some patrons actually move back as the females’ bodies approached their heads and faces.
"As the females continued to undulate and gyrate in this position, I observed numerous patrons hand dollars bills to them. The females took the dollar bills without hesitation and laid them down in a neat pile on the platform.
"The four females continued in the aforesaid manner until *388 the music stopped. At that time, each of them scooped up her pile of dollar bills and stepped down from the platform.
"Upon descending from the platform, the females put on one-piece tentlike smocks which covered much of their otherwise nude bodies and begun [sic] mingling with the patrons. One of the females immediately approached me and asked me to buy her a drink. I refused and she called me 'cheap’ as she walked on to another patron.”
The publisher’s description of his visit to the premises on a different day was similar. Photographs of the premises, annexed as exhibits to the papers, corroborate the description of the physical layout, including the proximity of the platform to the patrons.
In opposition to this evidence, defendant’s principal submits his own affidavit, in which he does not deny the allegations of the moving affidavits, but merely urges that "it has never even been asserted that there is any prostitution or that there has ever been any solicitation for prostitution on the premises. We have always employed professional dancers who have never been permitted to touch patrons.” On oral argument of this motion, counsel for defendants, in unsworn hearsay, denied that the "performance” at the subject premises is lewd. In fact, he likened it to a performance of the ballet "Swan Lake”.
From the basically undisputed evidence, the court concludes that the activities at the subject premises are lewd, gross and disgusting. They principally involve nude women gyrating, who also thrust their genitals at the faces of onlooking men, in return, apparently, for gratuities. To compare this exhibition to any form of legitimate choregraphy, much less classical ballet, is little short of grotesque.
The question for this court to determine, then, is whether there exists authority under applicable statutes, and within the strictures of the Constitution, to enjoin these activities.
The city relies on section 2321 of the Public Health Law. That section empowers this court to enjoin a "nuisance” as defined in title II of article 23 of that law. Section 2320 of the law provides, in pertinent part, that: "Whoever shall erect, establish, continue, maintain, use, own, or lease any building, erection, or place used for the purpose of lewdness, assignation, or prostitution is guilty of maintaining a nuisance.”
The city urges that, since the premises are used "for thé *389 purpose of lewdness”, this court may enjoin their use as a "nuisance”.
It appears, however, that the statute on which the city relies does not pertain to establishments such as defendants’, and was not intended to apply to them. Title II of article 23 of the Public Health Law is entitled "Houses of Prostitution: Injunction and Abatement”, and the title of each section of the article, including sections 2320 and 2321, contains the prefix: "Houses of prostitution”. The thrust of the article is thus apparent. It was directed specifically at houses of prostitution, and not at lewdness or obscenity generally. While it may well be true, as the Corporation Counsel urges, that "an establishment featuring live obscene performances can be as much a nuisnace to a community as any brothel,” the fact remains that defendants’ premises are not a brothel, and the court may not strain the statute beyond its intended purpose.
The city also relies upon section 564-15.0 of the Administrative Code of the City of New York, which, in pertinent part provides: "The word 'nuisance’, shall be held to embrace public nuisance, as known at common law or in equity jurisprudence; whatever is dangerous to human life or detrimental to health * * * All such nuisances are hereby declared illegal.”
At common law, a brothel was a public nuisance because "it endangers the public Peace by drawing together dissolute and debauched Persons; and also has an apparent Tendency to corrupt the Manners of both Sexes by such an open Profession of Lewdness” (Bacon, Abridgement of the Law, subtitle on Nusances, cited with approval in People v Vandewater, 250 NY 83, 87; see, also, King v People, 83 NY 587). Similarly here, since the lewd exhibitions at defendants’ premises are no ■ different from those at a brothel, it would appear that the subject premises would constitute a public nuisance as known at common law.
However, as the Court of Appeals has warned, "an unrestricted judicial power to punish as a public nuisance all practices which in the opinion of the courts corrupt public morals or disturb the public peace might create a danger of judicial invasion of the legislative field, through the creation of new crimes by the courts.” (People v Vandewater, 250 NY 83, 91, supra.) Accordingly, to be deemed a public nuisance, an act either must itself be illegal, or must be performed in an illegal manner (see State of New York v Wright Hepburn *390 Webster Gallery, 64 Misc 2d 423, 427, affd 37 AD2d 698). Especially is this so in this case, where the conduct complained of is affected by considerations involving the applicability of the First Amendment. (See California v LaRue, 409 US 109, 118.)
Under New York law, it is not unlawful to be unclothed in a public place (People v Price, 33 NY2d 831). It has also been held that one who performs "lewdly” in an enclosed establishment such as the subject premises, is not guilty of the crime of public lewdness (Penal Law, § 245.00; People v Conrad, 70 Misc 2d 408; People v Dangerfield, NYLJ, April 12, 1977, p 6, col 3).
The city argues, however, that the activities in defendants’ premises are illegal, in that they constitute the crime of obscenity (Penal Law, § 235.05).
New York law defines "obscenity” as follows: "Any material or performance is 'obscene’ if (a) considered as a whole, its predominant appeal is to prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism, and (b) it goes substantially beyond customary limits of candor in describing or representing such matters, and (c) it is utterly without redeeming social value” (Penal Law, § 235.00, (subd 1). The Rosetta Stone for interpretation of obscenity statutes is the opinion of the Supreme Court in Miller v California (413 US 15, 24), where the court outlined the scope of permissible obscenity statutes: "The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards’ would find that the work, taken as a whole, appeals to the prurient interest [citations omitted]; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.” The court further stated that, while it would not propose legislation for the various States,
"It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra:
"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
"(b) Patently offensive representations or descriptions of *391 masturbation, excretory functions, and lewd exhibition of the genitals” (413 US 15, 25).
Applying the Miller rules, our Court of Appeals has found that the New York definition of "obscenity” complies with constitutional mandates. In People v Heller (33 NY2d 314, 327-328), the court held that: "When sex and nudity, and the other sorts of prohibited conduct for that matter, are exploited substantially beyond customary limits of candor and would, as the average man views it, be the predominant element in the material so as to appeal, again predominantly, to lascivious cravings, then there can be no doubt as to what is prohibited. * * * [§ 235.00] is easily interpreted as pertaining to hard core pornography and the average man, whether he be the smut peddler or the policeman, knows it when he sees it [citation omitted]. And, as interpreted, that statute has been given and will be given only that narrow application. One surely can describe forbidden conduct by words which admit of varying constructions depending on context, and then affix definite meanings to those words by construing them only in the light of the conduct sought to be prohibited. In other words, while the terms 'sex’ and 'nudity’ are not inherently pornographic and would not necessarily be pornographically dealt with, even if exploited commercially, the exploitation would be considered pornographic if its predominant appeal went to the prurient interest and it exceeded the customary limits of descriptive candor. This includes, and has been limited to, offensive depictions of ultimate sexual acts, masturbation, excretory functions, lewd genital exhibition, i.e., exactly that sort of thing described in the Miller opinion”.
From the evidence now before it, the court concludes that the "performances” at the subject premises constitute the crime of "Obscenity” as defined by section 235.00, and as interpreted by Miller and Heller. Based upon the community standards of New York, and even "by the community standards of Sodom and Gommorrah” (see Redlich v Capri Cinema, 43 AD2d 27, 28), the predominant appeal of these "performances” — indeed their only appeal — is to prurient interest. Moreover, the "performances” constitute "patently offensive” sexual conduct, i.e., a "lewd exhibition of the genitals”. It is difficult to imagine a more offensive or lewd desplay of the genitals than that described as occuring here. Finally, the "performances” lack any redeeming social value, or any "serious literary, artistic, *392 political or scientific value.” Indeed, defendants have not even sought to ascribe any such value to their "performances”.
Accordingly, the court finds that the subject premises are maintained for the purpose of the commission of criminal and immoral acts of obscenity. This is an "injury to health and morals of the community [which] constitutes an offense against the peace and order of the State and a common nuisance as understood at common law” (People v Vandewater, 250 NY 83, 98, supra; see, also, Copart Ind. v Consolidated Edison Co., 41 NY2d 564).
The question finally remains whether this nuisance may be enjoined. While criminal acts are not generally subject to injunction, but rather, , to criminal prosecution only, the court may issue an injunction when criminal penalties are "insufficient and inadequate as to defendant and would not afford protection to the health and safety of the public” (People ex rel. Bennett v Laman, 277 NY 368, 374). Moreover, it has been held, specifically with regard to obscenity, that injunctive relief is available despite the coexistent remedy of criminal prosecution (People v Bercowitz, 60 Misc 2d 1078).
Injunctive relief is fully warranted here. The few arrests that have ben made in the subject premises have resulted, as is often the fact in such cases, in a few small fines. To protect the public from what the submitted papers establish to be a continuing public nuisance perpetrated by defendants, requires injunctive relief.
Accordingly, the motion for a preliminary injunction is granted.