STATE of Tennessee, Appellee,

v.

**Francis Donna FRAZIER, and Sharon Theresa Probst, Appellants.**

Court of Criminal Appeals of Tennessee, at Jackson.

Oct. 25, 1984.

Permission to Appeal Denied by Supreme Court Dec. 31, 1984.

Phillip E. Kuhn, Memphis, for Frazier.

Arch B. Boyd, III, Memphis, for Probst.

William M. Leech, Jr., Atty. Gen., Gordon W. Smith, Asst. Atty. Gen., Nashville, P. Thomas Hoover, John Candy, Asst. Dist. Attys. Gen., Memphis, for appellee.

OPINION

TATUM, Judge.

Defendant, Francis Donna Frazier, was convicted of two counts and defendant Sharon Theresa Probst, was convicted of one count of presenting live obscene dances in violation of the obscenity statute (T.C.A. § 39–6–1104).

Punishment of each defendant on each count was fixed at sixty (60) days in the Shelby County Correctional Center. Frazier was manager of "The Follies," a topless nightclub owned by Playgirl, Inc., which was also convicted but did not appeal. After considering the issues presented by Frazier and Probst, we affirm their convictions.

We first address defendant Probst's issue attacking the sufficiency of the evidence. The accredited evidence established the following facts:

On May 29, 1981, John Mark DiScenza, a Memphis police officer assigned to a special task force investigating obscenity, went to the Memphis Topless Nightclub known as "The Follies" along with Assistant Shelby County Attorney General Kathleen Spruill, and a friend of hers known as Patty. That night DiScenza observed between twenty and twenty-five dancers, each performing three dances. Officer DiScenza saw Sheila Diane Perkins, known as "Heartbeat," perform on stage and at a table dance. On stage, Ms. Perkins removed her clothing, fondled herself, and exposed her genitals to the customers. Ms. Perkins also rubbed her face between the legs of a male customer in an act of simulated oral sex.

Officer DiScenza testified that on that evening he also saw defendant Probst, whose stage name was "Dawn," perform several stage dances. He described the dance:

"A. Okay. She would get up on stage like the other girls. They would call her name and she would get up. I don't remember what she was wearing. I know she had a cowboy hat on and she would remove her clothing and come to the edge of the stage and she would spread her legs about three or four feet apart and squat down and spread her legs out like that and then took her hand and came on up and then she would stand back and turn around and bend over and expose her anal section toward the customers. She did this around the

stage. She probably did about three dances that night in the same manner." He testified that she rubbed her vaginal area and her breasts. Frazier was manager of "The Follies" and sponsored these dances.

■ Defendant Probst insists that the evidence is insufficient to support a finding that she presented an obscene live performance in violation of T.C.A. § 39–6–1104. The record, however, contains sufficient evidence from which a rational trier of fact might conclude that she was guilty beyond a reasonable doubt of violating the obscenity statute. Rule 13(e), T.R.A.P.; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ Nude dancing, while not in itself obscene, may become obscene when combined with certain sexual conduct such as lewd exposure of the genitals—e.g., *Commissioner of Bldgs. v. Sidne Enterprises, Inc.*, 90 Misc.2d 386, 391, 394 N.Y.S.2d 777 (Sup.Ct.N.Y.Co., 1977).—or the fondling of one's own breasts and vaginal area while dancing—e.g., *People v. Better*, 33 Ill. App.3d 58, 337 N.E.2d 272 (1975). The dancing of defendant Probst, as described by the above-summarized testimony of the State's witness, included the rubbing of her own breasts and vaginal area, and further, could be said to constitute the lewd exposure of her genitals. This evidence was more than sufficient to present a jury issue as to the obscenity of her conduct. See *Brazelton v. State*, 550 S.W.2d 7, 9 (Tenn. Crim.App.1974).

■ The jury was properly instructed in accordance with the constitutional standards enunciated in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) and T.C.A. § 39–3001 (now § 39–6–1101(5)), that

" 'Obscene' means: (A) That the average person applying contemporary community standards would find that the work taken as a whole appeals to the pruient interest; (B) That the work depicts or describes, in a patently offensive way, sexual conduct; and (C) That the work, taken as a whole, lacks serious literary, artistic, political or scientific value."

"A juror is entitled to draw on his own knowledge" of contemporary community standards in determining whether certain conduct is obscene, "just as he is entitled to draw on his knowledge of the propensities of a 'reasonable' person in other areas of the law." *Hambling v. United States*, 418 U.S. 87, 104, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590, 613 (1974). The jury's finding in this case that the dancer's conduct met the constitutional test of obscenity was amply supported by the evidence. This issue has no merit.

■ We next address defendant Frazier's contention that the obscenity statute, T.C.A. § 39–6–1104, violates the First Amendment right to privacy because it impermissibly prohibits private sexual conduct between consenting adults. We find this contention to be without merit, and re-affirm the statute's constitutionality.

The United States Supreme Court has established that obscenity is not expression protected by the First Amendment. *Miller v. California*, 413 U.S. 15, 23, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419, 430 (1973); *Roth v. United States*, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498, 1507 (1957). In *Leech v. American Booksellers Association, Inc.*, 582 S.W.2d 738 (Tenn. 1979), the Tennessee Supreme Court adopted the federal constitutional standards on obscenity as outlined in *Miller v. California, supra.*

■ One of the primary justifications for obscenity regulation is the State interest in shielding juveniles and unconsenting adults from obscene material. *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); however, obscene materials do not acquire constitutional immunity from State regulation merely because they are exposed solely to consenting adults. The State has "the power to make a morally neutral judgment that public exhibition of obscene materials, or commerce in such material, has a tendency to injure the community as a whole, to endanger the public safety, or to jeopardize the State's

'right to maintain a decent society.' " 3 Wharton's Crim.L. § 305 (14th Edition 1980) (quoting *Jacobellis v. Ohio*, 378 U.S. 184, 199, 84 S.Ct. 1676, 1684, 12 L.Ed.2d 793 (1964). Moreover, the right to privacy affords no constitutional protection for obscenity outside the home. *United States v. Orito*, 413 U.S. 139, 142–43, 93 S.Ct. 2674, 2677, 37 L.Ed.2d 513, 518 (1973). As the Supreme Court has observed,

> "(t)he idea of a 'privacy' right and a place of public accommodation are, in this context, mutually exclusive. Conduct or depictions of conduct that the state police power can prohibit on a public street does (sic) not become automatically protected by the Constitution merely because the conduct is moved to a bar or a 'live' theatre stage ..."

*Paris Adult Theatre I v. Slaton, supra,* 413 U.S. at 66–67, 93 S.Ct. at 2640.

Defendant Frazier next insists that the trial court's consolidation of the two indictments and admission of evidence of other matters not occurring on the date of the instant offense violated her due process right to a fair and impartial trial. We disagree.

The trial court allowed the consolidation of indictments 81882 and 81883. The State proceeded to trial on counts 2 and 4 in indictments 81882, and counts 1, 2, and 4 in indictment 81883. Count 2 of indictment 81882 charged defendant Frazier with presenting an obscene live performance on May 29, 1981, involving Shelia Diane Perkins; count 4 charged Playgirl, Inc., doing business as The Follies, with presenting that same performance. Count 1 of indictment 81883 charged defendant Probst with presenting an obscene live performance on May 29, 1981; count 2 charged defendant Frazier with presenting that same performance; and count 4 charged Playgirl, Inc., with presenting that performance.

■ Rule 13(a), T.R.Cr.P., permits consolidation of indictments for trial where the offenses and all of the defendants could have been joined in a single indictment pursuant to Rule 8. The offenses in indictments 81882 and 81883, arising from the same criminal episode, were appropriate for mandatory joinder under Rule 8(a). Moreover, since the offenses charged were part of a common scheme or plan, permissive joinder was appropriate pursuant to Rule 8(c)(3)(i). Thus, consolidation of the indictments for trial was proper. *State v. Peacock*, 638 S.W.2d 837 (Tenn.Crim.App. 1982). Furthermore, the trial court did not err in denying Frazier's motion for a severance of offenses made before trial. No evidence was introduced against Frazier that would not have been admissible against her in a separate trial. "A severance was not necessary to achieve a fair determination of (Frazier's) guilt or innocence, and (she) was not unfairly prejudiced." *State v. Hammonds*, 616 S.W.2d 890 (Tenn.Crim.App.1981). See Rule 14(c)(2), T.R.Cr.P.; *Woodruff v. State*, 164 Tenn. 530, 538, 51 S.W.2d 843, 845 (1932).

■ Likewise, the trial court properly admitted evidence of other matters not occurring on the date of the instant offense. The general rule is that proof in a criminal prosecution tending to show that the accused is guilty of the commission of other crimes and offenses is inadmissible for the purpose of proving the commission of the particular crime charged; however, evidence of other crimes or acts of misconduct may be introduced for other limited purposes, such as to show guilty knowledge or intent. *Collard v. State*, 526 S.W.2d 112, 114 (Tenn.1975). Evidence that the investigating police officer had been to the club on other occasions and had seen similar conduct was admissible to show the guilty knowledge of Frazier and Playgirl, Inc. as to the obscene performance in the club. The trial court properly instructed the jury on the limited purpose of this evidence. Proof that on August 30, 1980, defendant Frazier stated, when advised of possible violations, that her club was doing no more than any other topless nightclub in the city, was relevant to show her knowledge of the activities at the club. Proof that in September, 1980, Frazier admitted at a beer board hearing that she was the manager of the club was relevant to show that she

presented the obscene performance on May 29, 1981. Finally, proof that other dancers performed similar conduct on May 29, 1981 was relevant to show the intent and guilty knowledge of Frazier and Playgirl, Inc., on that date. The evidence did not prejudice Probst.

Both defendants next allege numerous instances of prosecutorial misconduct throughout the trial. They claim that this prosecutorial misconduct was prejudicial to them, and denied them a fair and impartial trial in violation of their federal and State due process rights. After careful consideration of the record, we find that the allegations of prejudicial prosecutorial misconduct have been waived in part, and that the remaining allegations are without merit.

In her motion for a new trial, defendant Frazier specifically alleged that (1) the prosecutor improperly used police reports by the State's witnesses in the presence of the jury, and (2) the prosecutor wrongfully interjected in voir dire, opening statement, and closing arguments, the harmful nature of pornography, implications of children's exposure to obscenity, and the "good of the community." Frazier's motions for a new trial also alleged that the prosecutor's "constant and persistent questioning of witnesses to elicit irrelevant, inadmissible and highly prejudicial responses from them in the presence of the jury ... had a cumulative effect denying the defendant a fair and impartial trial as required by due process...." Her motion for a new trial stated:

> "All mistrial requests and objections to prosecutorial conduct as argued at the trial and if the trial court wishes to have said errors specified with more factual particularity, then the defendant specifically requests the argument on the Motion for New Trial continued until such time as the Court reporter can transcribe the trial record and trial counsel can have a reasonable opportunity to review the trial record in this cause."

Finally, Frazier specifically reserved the right to file amended motions for a new trial. Defendant Probst adopted Frazier's motion for a new trial. Neither motion was ever amended.

■ On appeal, defendants assert numerous specific instances of alleged deliberate and prejudicial prosecutorial misconduct. We hold that, with the exception of the allegations specifically raised in the motion for a new trial, the defendants' claims of prosecutorial misconduct have been waived. Rule 3(e), T.R.A.P., requires that issues be specifically raised in a motion for a new trial; otherwise such issues are waived. This court has held that grounds asserted

> "must be specified with reasonable certainty in a motion for a new trial to advise the trial court and opposing counsel of the alleged error or irregularities relied upon and to enable the appellate court to see that the alleged error was presented to the trial court for correction as required by Rule 36(a), T.R.A.P."

*State v. King,* 622 S.W.2d 77, 79 (Tenn. Crim.App.1981).

We find that, except for the particular allegations noted above, the grounds relied upon in the motion for a new trial were not specified with reasonable certainty.

The reference to "all mistrial requests and objections to prosecutorial conduct" in the motion for a new trial does not comply with Rule 3(e), T.R.A.P. Alleged errors not specified with reasonable certainty were waived.

■ With regard to the allegations properly preserved for appeal, we find no basis for reversal. The test for appellate review of allegations of prosecutorial misconduct is "whether the improper conduct could have affected the verdict to the prejudice of the defendant." *Harrington v. State,* 215 Tenn. 338, 340, 385 S.W.2d 758, 759 (1965). Our analysis is concerned with "the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87 (1982). Applying this test, we find that the remaining allegations of misconduct could not have affected the verdict to the prejudice of the jury, and, as such, are

not reversible. These matters are most innocuous. Defendants' first allegation is that, during his redirect examination of the investigating officer, the prosecutor improperly asked the witness to look at his police report and see if Danny Owens, the owner of the club, was present when the officer observed the obscene conduct. The trial judge sustained the defense objection to the use of police reports in that fashion and admonished the prosecutor to follow the Rules of Criminal Procedure in using such reports, but found that no prejudice to the defendant had occurred. Second, the record reflects that when the prosecutor asked during voir dire, "Do you think that young people know too much about sex these days? ", the trial judge sustained the objection on relevancy grounds and properly instructed the jury.

The defendants have gone through the record of this four-day trial and listed questions asked witnesses by the State, questions asked on voir dire, opening statements and argument saying that the cumulative effect constitutes prosecutorial misconduct which denied fundamental due process. We have considered these matters and disagree that fundamental reversible error was committed with reference to them. Issue III is overruled.

■ The defendants next contend that the failure of the State to reveal an eyewitness known only to the State violated their due process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We hold that the defendants have waived this issue.

■ The record reveals that the defendants made no pre-trial request for discovery of eyewitnesses pursuant to Rule 16, T.R.Cr.P. Any request for discovery under Rule 16 must be made prior to trial or the State's alleged failure to produce is waived. Rule 12(b)(4) and (f). Moreover, the defendants did not raise the issue at trial or in their motions for a new trial. The issue was waived. Rule 3(e), T.R.A.P., *State v. Sutton*, 562 S.W.2d 820 (Tenn. 1978); *State v. Shelton*, 649 S.W.2d 24 (Tenn.Crim.App.1983).

The defendants next insist that the trial court committed reversible error by improperly instructing the jury. They claim the trial court erred in (1) instructing the jury that, for the purpose of "community standards," "community" meant the State of Tennessee; (2) instructing the jury to give the defendants' testimony "such weight as you may think it entitled to;" (3) denying a special request for instructions on "specific intent;" (4) denying a special request that mere knowledge and presence are not enough for a conviction; and (5) giving an inadequate jury instruction on "constructive knowledge." After considering each of defendants' contentions separately, we find the trial court's jury instructions were proper.

■ First, the defendants claim that, in instructing the jury on "community standards," the court should have charged that "community" referred to Shelby County, instead of the State of Tennessee. We find that the trial court properly instructed the jury, in accordance with the definition section of the obscenity statute, T.C.A. § 39–6–1101(1), that "community" refers to the State of Tennessee. The definitions contained in that section have been held to comport with the constitutional requirements set forth in *Miller v. California, supra. Taylor v. State*, 544 S.W.2d 897, 902 (Tenn.Crim.App.1976). We reaffirm the constitutionality of the statutory definition of "community."

■ The defendants' second contention is that the trial judge improperly commented on the evidence in his charge to the jury that when a defendant takes the stand on his/her own behalf, they were to give "to such defendant's testimony in this case such weight as you may think it entitled to." This instruction was taken from Tennessee Pattern Jury Instruction—Criminal 37.01. We find no error in the use of this instruction.

■ At common law, an accused was disqualified from testifying in his own behalf. This rule has been abolished in the

United States. 2 Wigmore, Evidence § 579 (Chadbourne rev. 1979). In Tennessee, a person accused of a crime is constitutionally entitled to testify in his own behalf. Tenn. Const. Art. I, § 9; T.C.A. § 40–14–101, *Campbell v. State*, 4 Tenn.Crim.App. 100, 469 S.W.2d 506 (1971). Moreover, a defendant who voluntarily takes the stand in his own behalf is subject to the same consideration as any other witness. *Peck v. State*, 86 Tenn. 259, 6 S.W. 389 (1888). The trial judge was doing no more than instructing the jury, in accordance with well-settled Tennessee law, that the jurors are the sole and exclusive judges of the facts and the credibility of witnesses and the weight to be given witness testimony and that a testifying defendant is entitled to the same consideration as any other witness. See also *Shiflet v. State*, 216 Tenn. 365, 368, 392 S.W.2d 676, 678 (1965); *Holt v. State*, 210 Tenn. 188, 197–98, 357 S.W.2d 57, 62 (1962).

■ The defendant also challenges the trial court's denial of the requested instruction on specific intent and the requested instruction that mere knowledge and presence are not enough to convict. We find that both of these requests were adequately covered by the general charge; thus, no error resulted. *State v. Keele*, 644 S.W.2d 435, 438 (Tenn.Crim.App.1982).

■ The defendants' final contention with regard to the trial court's instructions is that the court's general charge on "constructive knowledge" was insufficient. The trial court charged verbatim the definition of constructive knowledge as contained in T.C.A. § 39–6–1101(3); therefore, this instruction was correct and sufficient.

■ Defendant Probst next insists that the trial court erred in failing to grant a new trial on the ground of jury misconduct. Specifically, she alleges that the jury disregarded the trial court's instructions and engaged in deliberation on the case prior to the conclusion of the proof. In support of her allegation, defendant Probst offers the affidavit of Attorney Arch B. Boyd, III, who received this information from an alternate juror. We hold that the trial court properly denied the motion for a new trial on the ground of jury misconduct.

This court has recognized that Rule 606(b), Federal Rules of Evidence, is essentially a codification of Tennessee law with respect to the scope of appellate review on the validity of a jury verdict. *State v. Blackwell*, 664 S.W.2d 686, 689–9 (Tenn. 1984); *Montgomery v. State*, 556 S.W.2d 559, 560–62 (Tenn.Crim.App.1977). Rule 606(b) provides that

"A juror may not testify as to any matter or statement occurring during the course of the jury's deliberation or to the effect of anything upon his or any other juror's mind or motion as influencing him to assent to or dissent from the verdict ... or concerning his mental processes in connection therewith, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes."

The alleged discussion by the members of the jury does not constitute "extraneous prejudicial information" or "outside influence." Therefore, the affidavit was not admissible in evidence. FRE 606(b); *Montgomery v. State, supra*.

Finding no error, we affirm the judgments of conviction.

SCOTT, J., concurs.

DAUGHTREY, J., dissents.

DAUGHTREY, Judge, separately dissenting.

Given the vagueness of the testimony regarding defendant Probst's conduct in this case, I do not believe that the evidence is constitutionally sufficient to support her conviction, and I therefore dissent.

Although the United States Supreme Court has never decided a case involving a

live performance on its merits, the Court has indicated that "the customary 'bar room' type of nude dancing may involve only the barest minimum of protected expression" but that "this form of entertainment [may] be entitled to First and Fourteenth Amendment protection under some circumstances." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975), citing *California v. LaRue*, 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972). Moreover, in the landmark case of *Miller v. California*, the Court held that "no one [should] be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive 'hard core' sexual conduct...." 413 U.S. 15, 27, 93 S.Ct. 2607, 2616, 37 L.Ed.2d 419 (1973).

Probst's activities in this case can hardly be described as "hard core." According to the testimony of Officer DiScenza, her conduct was not materially different from that depicted in publications currently sold in virtually every newsstand and convenience market in Tennessee.

To the extent that activities like those in this case require regulation, they are more appropriately and effectively regulated by our Alcoholic Beverage Commission. *See generally California v. LaRue, supra.* By pursuing this latter route, the state both conserves its criminal prosecution reserves and avoids the risk of violating the First Amendment.

Sexual exploitation of children may also be regulated without running afoul of the constitution. *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). But there was no evidence of the involvement of children in this case, either on the stage or in the audience. What we have instead is a group of adults who may have been misguided in their desire to watch what many would find to be a distasteful and vulgar performance, but none of whom were forced to attend nor exposed involuntarily to that performance.