# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### April 19, 2011 Session

## STATE OF TENNESSEE v. KENNETH KISAMORE

**Appeal from the Circuit Court for Warren County**
**No. F-11093    Larry B. Stanley, Jr., Judge**

---

**No.  M2010-01565-CCA-R3-CD - Filed June 21, 2011**

---

Appellant, Kenneth D. Kisamore, was indicted by the Warren County Grand Jury for two counts of delivery of more than .5 grams of cocaine, in two separate cases, numbered F-11092 and F11093.  The cases were consolidated prior to trial.  After a jury trial, Appellant was found not guilty of the offense in case number F-11092 and guilty of the offense, as indicted, in case number F-11093.  As a result of the conviction, Appellant was sentenced as a Range III, persistent offender to twenty-five years in incarceration.  After the denial of a motion for new trial, Appellant has appealed, presenting the following questions for our review: (1) whether it was plain error for the trial court to allow the prosecutor to comment about the sentence received by a defendant charged along with Appellant thereby violating Appellant's rights under Tennessee Code Annotated section 40-35-201(b); (2) whether the trial court erred by refusing to allow the testimony of jurors regarding extraneous prejudicial information; and (3) whether the evidence was sufficient to support the conviction.  After a review of the record, we conclude that Appellant waived the issue regarding the alleged violation of Tennessee Code Annotated section 40-35-201(b) for failure to object at trial.  Further, we determine that Appellant waived the issue regarding juror testimony for failure to submit an adequate record for review.  Finally, after a review of the evidence, we conclude that the evidence was sufficient to support the conviction. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., JOINED.

Benjamin R. Newman, McMinnville, Tennessee, for the appellant, Kenneth Kisamore.

Robert E. Cooper, Jr., Attorney General and Reporter, Clark B. Thornton, Assistant Attorney General; and Lisa Zavogiannis, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

Appellant was indicted by the Warren County Grand Jury in two separate indictments for the delivery of cocaine over .5 grams. At trial, Mark Martin, an investigator for the Warren County Sheriff's Office, explained that Appellant was indicted based upon a controlled drug buy that was initiated by a confidential informant, Steven Dykes.

At some time previous to the controlled drug buy, Investigator Martin met Mr. Dykes, a previous user of cocaine. When the two met, Mr. Dykes told Investigator Martin about how cocaine "ruined his life" and that he wanted to try to "help the community." Mr. Dykes agreed to work as an informant.

On September 28, 2006, Investigator Martin and several other officers conducted a controlled buy using Mr. Dykes as an informant. Mr. Dykes was wired with an audio device before he went into a bar called W.T.'s to buy drugs from a target, Jerry Simmons. Bo Ramsey of the Warren County Sheriff's Office monitored the recording of the transaction. Bill Davis of the McMinnville Police Department was responsible for taking notes on the audio and searching the informant both before and after the transaction. The quality of the audio was poor due to the high level of noise in the bar.

Mr. Dykes went into the bar, spoke with several people other than Appellant, and purchased drugs. He came back to report to the officers after the buy, informing them that he bought the drugs from Mr. Simmons but that he "spoke with Appellant while he was there about the purchase." During this transaction, Mr. Dykes purchased one gram of cocaine.[1] Mr. Dykes "knew of" Mr. Simmons from previous drug connections, and Mr. Dykes knew Appellant as someone who sold cocaine. According to Mr. Dykes, Mr. Simmons left the bar for some time and met with Appellant in the parking lot, where Appellant handed Mr. Simmons something. Mr. Dykes could not tell what it was at the time. Mr. Simmons came back into the bar and motioned for Mr. Dykes to come meet him in the men's restroom where Mr. Simmons delivered the cocaine.

---

[1] The State and Appellant entered a stipulation at trial that established both the chain of custody of the drugs as well as the laboratory analysis of the evidence.

When Mr. Dykes left the bar, he saw Appellant's car in the parking lot. He read the license plate number over the wire to the officers.

On October 18, 2006, Investigator Martin made arrangements with Mr. Dykes to purchase more cocaine. Mr. Dykes entered W.T.'s and tried to find Mr. Simmons. When Mr. Dykes did not find Mr. Simmons at W.T.'s, the officers sent him to another bar called Smeds. Mr. Dykes spoke with Mr. Simmons who told him that he would be back at W.T.'s later. Mr. Dykes met with the officers and "grabbed a bite to eat and sat around and talked" before he was sent back to W.T.'s. When Appellant got back to W.T.'s, he spoke directly to Appellant, asking if Appellant could "hook" him up with drugs. After about five minutes, Appellant and Mr. Dykes went to the parking lot where Appellant "produced two small dark colored bags." Mr. Dykes gave money to Appellant and left the area. This transaction was also recorded with the use of a wire. The cocaine weighed .9 grams.

While the investigators did not witness the transaction they were able to observe Appellant pulling into the parking lot at the same time Mr. Dykes was saying "okay, the target has arrived, and then the purchase [will] take place."

Appellant took the stand in his own defense. He admitted that he regularly went to W.T's and that he knew Mr. Simmons. Appellant claimed that he had only a "vague memory" of Mr. Dykes. Appellant denied selling drugs.

Mr. Simmons testified at trial. He admitted that he had been charged in connection with the aforementioned incidents and that he plead guilty to the charges stemming from activity on October 18. Mr. Simmons denied getting any cocaine from Appellant to sell to Mr. Dykes.

At the conclusion of the evidence, the jury found Appellant not guilty in the case arising from the September buy and guilty in the buy which occurred in October. At a sentencing hearing, the trial court sentenced Appellant as a Range III, persistent offender to twenty-five years to be served in incarceration.

After the denial of a motion for new trial, Appellant filed a timely notice of appeal. On appeal, Appellant argues that the evidence is insufficient to support the conviction, that the prosecutor's reference to Mr. Simmons sentence amounted to an improper reference to Appellant's sentence in violation of Tennessee Code Annotated section 40-35-201(b). Appellant's potential punishment in front of the jury, and that the trial court improperly excluded testimony from jurors to show that extraneous prejudicial information influenced their verdict.

*Analysis*

Appellant argues that the attorney for the State mentioned the sentence that Mr. Simmons received in exchange for his guilty plea and that this insinuated to the jury that Appellant would or could get a similar sentence. Appellant suggests that this is plain error. The State disagrees, arguing that Appellant's failure to make a contemporaneous objection waived any error and, in any event, the comment was not objectionable in the first place.

During the cross-examination of Appellant at trial, counsel for the State asked Appellant about "the time" when he and Mr. Simmons were arrested and charged with these incidents. The prosecutor asked Appellant if he was "aware" that Mr. Simmons "pled guilty to his part in this." Appellant acknowledged that he was aware of the guilty plea. The prosecutor then commented that Mr. Simmons "took his sentence and is serving some of it on probation still." Appellant now argues that the jury could have extrapolated the length of the sentence that Mr. Simmons received from these comments as it had been approximately a year and a half to two years from the time of the incidents to the date of the trial. Further, he argued that the jury could have assumed that Appellant would get a similar sentence if convicted.

Tennessee Code Section 40-35-201 appears in the section entitled "Procedure for Imposing Sentence." The statute in question provides, in pertinent part:

> In all contested criminal cases, except for capital crimes . . . , the judge shall not instruct the jury, nor shall the attorneys be permitted to comment at any time to the jury, on possible penalties for the offense charged nor all lesser included offenses.

T.C.A. § 40-35-201(b).

As Appellant properly notes, the majority of the cases addressing Tennessee Code Annotated section 40-35-201(b) deal with improper statements made by the trial court about penalties for noncapital first degree murder during jury voir dire or jury instructions. *See e.g.,State v. Charles Ray Allen*, No. M1999-00818-CCA-R3-CD, 2000 WL 1649507, at *7-8 (Tenn. Crim. App., at Nashville, Nov. 3, 2000), *perm. app. denied*, (Tenn. Apr. 9, 2001); *State v. Edward Pinchon*, No. M1999-00994-CCA-R3-CD, 2000 WL 284071, at *4 (Tenn. Crim. App., at Nashville, Mar. 17, 2000). In these cases, the defendant was required to demonstrate that but for the erroneous statements, there is a "reasonable probability the jury would have acquitted him of first degree murder and found him guilty of the lesser offense . . . or no offense at all." *Edward Pinchon*, 2000 WL 284071, at *4. This Court has also

determined that a statement by a prosecutor concerning the possible penalty that a defendant might receive can be harmless error. *State v. Letonio Swader*, No. M2005-00185-CCA-R3-CD, 2006 WL 287384, at *6 (Tenn. Crim. App., at Nashville, Feb. 6, 2006), *perm. app. denied*, (Tenn. June 26, 2006). Moreover, this case is unique in that it involves a comment on the sentence received by a person other than Appellant arising out of a crime for which both were charged.

At the hearing on the motion for new trial, the trial court noted properly that Appellant failed to make an objection to the statements of counsel for the State at trial. Appellant argued that no objection was required and, in the alternative, that the trial court's allowance of the statements amounted to plain error. We disagree. Appellant's failure to object to the statements at trial constitutes waiver of the issue on appeal. *See* Tenn. R. App. P. 3(e) and Tenn. R. App. P. 36(a) (stating "nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Appellant also argues that the trial court committed plain error[2] by allowing the prosecutor to improperly comment on Mr. Simmons sentence. When determining whether plain error review is appropriate, the following five factors must be established:

> "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused [must not have waived] the issue for tactical reasons; and (e) consideration of the error [must be] "necessary to do substantial justice."

*State v. Terry*, 118 S.W.3d 355, 360 (Tenn. 2003) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted)). Herein, Appellant has not shown that the failure to object was not a tactical move by counsel or that a clear and unequivocal rule of law was breached. Indeed, section 40-35-201(b) does not by its terms prohibit a comment on the actual sentence received by one other than the criminal defendant himself. Moreover, we have not been directed to any case holding that such a coment is improper. Consequently, Appellant is not entitled to plain error review.

---

[2]Effective July 1, 2009, Tennessee Rule of Criminal Procedure 52 was deleted in its entirety, and the plain error language was added to Rule 36(b).

*Juror Testimony*

Next, Appellant argues that the trial court erred by refusing to allow the testimony of a juror at the hearing on the motion for new trial. Appellant argues that extraneous prejudicial information was improperly brought to the jury's attention by counsel for the State when the prosecutor's comments about Mr. Simmons' sentence were heard by the jury. Appellant sought to introduce testimony from a juror at the hearing on the motion for new trial to show how the jury considered the information. The State contends that there is no evidence that the trial court ruled on this issue and, in any event, evidence of juror deliberations is not admissible to impeach a verdict.

After filing the motion for new trial, Appellant subpoenaed Joshua Eckart in preparation for the hearing and procured an affidavit from juror Terry Panter. The subpoena does not appear in the record. The affidavit of Mr. Panter states that "[d]uring the deliberation, several members of the jury discussed the 'light' sentence the co-defendant, . . . , received." Mr. Panter went on to say that the jurors discussed whether Appellant would "receive the same or similar sentence" and "whether [Appellant] had a previous record." In response, the State filed a motion to quash, arguing that the testimony from jurors was not admissible pursuant to Tennessee Rule of Evidence 606(b).

The trial court issued an order on May 28, 2010, in which it ruled that "the affidavit and/or testimony of Juror, Terry Panter, is not admissible evidence in the Motion for New Trial pursuant to Tennessee Rules of Evidence 606(b)."

At the outset, we note that there is no transcript from the hearing on the motion to quash in the record. Further, it does not appear that the trial court considered the motion to quash with respect to Juror Eckart, as he is not mentioned in the order ruling on the motion. It is well-settled that it is the duty of the appellant to prepare a record that conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues that form the basis for the appeal. Tenn. R. App. P. 24(b); *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000); *State v. Miller*, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). In the absence of an adequate record, this Court must presume the correctness of the trial court's ruling. *State v. Bibbs*, 806 S.W.2d 786, 790 (Tenn. Crim. App. 1991).

Moreover, the testimony was not admissible. Tennessee Rule of Evidence 606(b) provides:

> (b) Inquiry Into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror *may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the*

*effect of anything upon any juror's mind or emotions as influencing that juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes*, except that a juror may testify on the question of whether any outside influence was improperly brought to bear upon any juror, or whether the jurors agreed in advance to be bound by a quotient or gambling verdict without further discussion; *nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.*

(emphasis added). In *Walsh v. State*, 166 S.W.3d 641, 649 (Tenn. 2005), the Tennessee Supreme Court held that Rule 606(b) of the Tennessee Rules of Evidence permits juror testimony to establish the fact of extraneous information or improper influence on the juror; however, juror testimony concerning the effect of such information or influence on the juror's deliberative processes is inadmissible. However, a juror is not permitted to testify about anything occurring during deliberations, including the juror's own internal thoughts, motivations or emotions. *Id.*

Our supreme court has held that "extraneous information" is information from a source coming to the jury outside. *State v. Coker*, 746 S.W.2d 167, 171 (Tenn. 1987). Thus, intra-jury pressure or intimidation, *State v. Hailey*, 658 S.W.2d 547, 553 (Tenn. Crim. App. 1983); premature jury deliberations contrary to the trial court's instructions, *State v. Frazier*, 683 S.W.2d 346, 353 (Tenn. Crim. App. 1984); and speculation about a verdict's consequences, *State v. Workman*, 667 S.W.2d 44, 51-52 (Tenn. 1984); have been found to be internal matters that do not involve extraneous information or outside influence. Appellant sought to introduce testimony of what occurred during the deliberation process, clearly inadmissible testimony according to *Walsh*. 166 S.W.3d at 649. Appellant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Finally, Appellant argues that the evidence is insufficient to support his conviction for delivery of more than .5 grams of cocaine. Specifically, Appellant argues that the only proof offered at trial was that of a paid informant. The State, on the other hand, argues that the evidence was sufficient.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the

accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S .W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

Appellant was convicted of delivery of more than .5 grams of cocaine, a violation of Tennessee Code Annotated section 39-17-417(a)(2). "It is an offense for a defendant to knowingly . . . . [d]eliver a controlled substance; . . . ." T.C.A. § 39-17-417(a)(2). A violation of subsection (a) is a Class B felony if the person has .5 grams or more of any substance containing cocaine. T.C.A. § 39-17-417(c)(1). "[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b).

The evidence at trial showed that Mr. Dykes was utilized by officers as a confidential informant to purchase cocaine from Appellant. Mr. Dykes was wired with an audio transmitter. While the transmitter did not function properly, authorities watched Mr. Dykes go into the bar and come out with cocaine. Mr. Dykes testified that on one occasion he got the cocaine directly from Appellant. Mr. Dykes returned to the officers and described in detail the transaction with Appellant. Appellant contends that "no reasonable juror" could have found the testimony of Mr. Dykes credible and that without his testimony, there was no proof that Appellant delivered a controlled substance. This is a challenge to the credibility of the witnesses. As stated previously, assessing the credibility of the witnesses is a task left to the trier of fact, not this Court. *Pruett*, 788 S.W.2d at 561. The jury heard the testimony and acquitted Appellant of one charge while convicting him of the other. The jury obviously

accredited the testimony of Mr. Dykes with respect to the second drug transaction. The evidence presented is sufficient to support the conviction. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH, JUDGE